**In re Dennis W. SCHENK, d/b/a Commercial Restaurant & Lounge, Debtor.**

**Bankruptcy No. 86–20459.**

United States Bankruptcy Court, D. Montana.

Nov. 19, 1986.

John H. Grant, Helena, Mont., for debtor.

Dunlap & Caughlan, Butte, Mont., trustee.

ORDER DENYING CHAPTER 13 PLAN

JOHN L. PETERSON, Bankruptcy Judge.

Hearing on confirmation of the Debtor's Chapter 13 Plan was held on November 10, 1986. The Debtor is a small business owner of a restaurant and lounge in Townsend, Montana. The original Plan proposed to pay $2,965.00 per month for the business operation based on projected annual income

of $270,000.00. On the day of the hearing, after objections to the Plan were filed by Raven's D & R Music, an unsecured creditor, the Debtor amended his Plan to provide for monthly payments of $1,209.51 based on projected gross income of $122,400.00. Creditors appearing at the confirmation hearing, either by counsel or pro per, were Phyllis Diehl, contract vendor of the business, Raven's D & R Music, and John Jepson, a third mortgage lienholder. After the hearing, the Debtor, through a letter from his counsel, filed an amendment to the Plan to include an unsecured creditor American Federal Savings and Loan in the payment schedule.

The Plan is somewhat unusual in that it proposes to pay certain unsecured creditors whose claims exceed $1,000.00, pro rata at 10% per month for 59 months, and in the 60th month, each creditor will be paid an additional 15%. Unsecured creditors under $1,000.00 are proposed to be paid 25% of their claim in the 60th month. Secured creditors whose claims are in default will be paid the arrearages over 60 months, and two secured creditors whose terms of payment exceed five years will be paid their regular monthly installment. Priority tax claims due Internal Revenue Service and Montana Department of Revenue will be paid in full without interest over 60 months. As to the IRS tax claim, there is a substantial difference of the sum proposed to be paid under the Plan ($28,967.00) and the Proof of Claim filed by the IRS ($37,589.26). The Plan does not recite, and there is no evidence in the record, as to how the Debtor arrived at the sum of $28,967.00, nor does the Plan break out any penalties due IRS. It is noteworthy that the claim filed by the Montana Department of Revenue in the amount of $8,103.35, the amount shown for payment in the Plan, includes penalties. In reviewing the claim of the IRS, the total principal tax is $28,966.66, which is evidently the figure used by the Debtor in the Plan. Pre-petition interest and penalties are thus ignored for payment under the Plan. There is no agreement in the record that the IRS has agreed to take less than the amount of its claim.

In a reorganization or plan repayment case, whether under Chapter 11 or Chapter 13, the Code imposes upon the Court the responsibility and duty to determine whether the requirements of Section 1322 and 1325 have been met, regardless of whether a valid objection to the Plan has been asserted by any creditor. See, e.g. *In Re Holthoff*, 58 B.R. 216, 218 (Bankr.E.D. Ark.1985) and *In Re Prudential Energy*, 58 B.R. 857, 862 (Bankr.S.D.N.Y.1986). In the case *sub judice* the Plan must be denied confirmation for four reasons. First, the payment proposal of the tax claims is contrary to Section 1322. The IRS filed its claim as partially secured and partially unsecured. The record in this case does not satisfy the requirements of 1322 or 1325. As stated in *In Re Healis*, 49 B.R. 939, 940/941, discussing the nexus between Chapter 13 and Section 507 of the Code:

"Section 507(a)(7) was designed for the priority treatment of unsecured tax liability. See *In Re Crotty*, 11 B.R. 507, 509 (Bankr.N.D.Tex.1981). The court in *Crotty* set forth the procedure for the treatment of tax claims in a Chapter 13 case as follows:

'As the government has filed its entire claim as secured, it is not entitled to treatment under Section 507 which grants priority only to unsecured claims of governmental units, * * * Insofar as secured claims are dealt with in a Plan, a condition to confirmation is that the value, as of the effective date of the plan, of property to be distributed under the plan on account of secured claims is not less than the amount of such claims, 11 U.S.C. Section 1325(a)(5).'

* * * * * * * *

In a repayment plan, the approach is to pay the secured tax claim in full and then to provide for priority payments for the balance of the unsecured tax claims. * * To the extent the unsecured tax claims of the IRS would fall under Section 507(a) priority claims, the IRS would be entitled

to full deferred payment over the course of the debtor's repayment plan."

Further, as to payment of penalties and post petition interest, *Healis* states (id. at 942):

"The plain meaning of the language of Section 507(a)(7)(g) is that if a penalty is assessed as part of the claim, it receives no priority treatment unless assessed as measure of the government's actual pecuniary loss (citing *In Re New England Carpet Company*, 26 B.R. 934 (Bankr.D. Vt.1983).

\* \* \* \* \* \*

We find no authority to support an award of post petition interest with regard to the unsecured portion of the IRS claims. \* \* \* The IRS is entitled, however, to receive post petition interest on the secured portion of its claim. It is well established that in order to provide a secured creditor with the value of his secured claim 'as of the effective date of the plan', the Debtor must pay interest on that claim. See 11 U.S.C. Section 1325(a)(5)(B)(ii); see generally *In Re Einspahr*, 30 B.R. 356 (Bankr.E.D.Pa.1983); *In Re Rutherford*, 28 B.R. 899 (Bankr.N. D.Ill.1983); *In Re Stafford*, 24 B.R. 840 (Bankr.D.Kan.1982)."

Post petition interest is fixed at the prevailing market rate. See *United States v. Neal Pharmacal Co.*, 789 F.2d 1283, 1289 (8th Cir.1986); *In Re Welco Industries*, 60 B.R. 880 (BAP 9th Cir.1986). In the present case, the Plan proposed to pay one government tax unit penalties (Montana) but not the other one (IRS). Further, IRS claims a secured status on the major portion of its claim by reason of notice of federal tax liens filed beginning February, 1986, presummably against the real and personal property of the Debtor's business. The testimony in the record by the Debtor values his assets at $120,000.00, which, claims the Debtor, washes out the third mortgage lien of Jepson recorded August 6, 1985, in the amount of $80,000.00. Yet, the Debtor, by virtue of proposing to pay the IRS secured claim in full, obviously contends there is sufficient value to pay

the IRS liens, which by law, is a fourth priority lien against the property. See *United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954); *In Re Granite Lumber Co.*, 63 B.R. 466, 469 (Bankr.Mont.1986) (the priority Internal Revenue Service lien is governed by the case of *United States v. New Britain*, 'The first in time is the first in right'). In sum, the tax claims have not been treated in accordance with the Code.

■ Second, the Plan provides to pay arrearages on defaults of secured claims over 60 months. The case law is fairly well developed that curing of a default under Chapter 13 is permissive, not mandatory, and if allowed, must be accomplished within a reasonable time. *In Re Peterson*, 53 B.R. 339 (Bankr.Oreg.1985); *Central Federal S & L v. King*, 23 B.R. 779, 9 B.C.D. 976 (BAP 9th Cir.1982). The cases are varied as to what is a reasonable time. Compare: *Philadelphia Savings Fund Society v. Stewart*, 16 B.R. 460 (Bankr.E.D. Pa.1981) (40 months reasonable) and *Central Federal S & L v. King*, supra, (31 months reasonable) with *In Re Miller*, 53 B.R. 100 (Bankr.S.D.Ohio 1985) (60 months unreasonable); *In Re Sardella*, 8 B.R. 401 (Bankr.S.D.Ohio 1981) (40 months unreasonable) and *In Re Pollasky*, 7 B.R. 770 (Bankr.Colo.1980) (24 months unreasonable). In the present case, I find 60 months is unreasonable where three year plans are the general rule, and five years the exception based on the extraordinary circumstances. 1322(c). No showing of exceptional circumstances has been made by the Debtor.

■ Third, I find the method of valuation of the Debtor's business is not worthy of belief. The Debtor alone testified the real and personal property was worth $120,000.00, based on income projections. Not only does the Debtor not have any expertise in the appraisal field, but his opinion on value flys in the face of other testimony that he purchased the property three years ago for $135,000.00 and has

invested over $80,000.00 in improvements. Also the Debtor failed to take into account newly developed income from the restaurant of $1,200.00 per month net, a sum which he nevertheless includes in his Plan. The question of valuation directly affects the treatment of the Jepson mortgage and the IRS tax liens. Recent purchase price of property has been held to be the best evidence of value for the valuation of collateral in a Chapter 13 case. *In Re Walkup*, 28 B.R. 225 (Bankr.N.D.Ind.1983) (actual sales price of a restaurant and real estate was the best evidence of values); *In Re Reynolds*, 17 B.R. 489 (Bankr.N.D.Ga. 1981). And while a Debtor's estimate of value may be acceptable in certain cases, *In Re Williams*, 3 B.R. 728 (Bankr.N.D.Ill. 1980), in this case the Debtor's opinion was not based on sufficient facts to allow the Court to give credible weight to his opinion.

 Finally, I would also note that the Plan provides that in the 60th month the Debtor would have to have available the sum of $18,324.35 cash to complete payments to creditors with Trustee fee in a lump sum. The Debtor did not explain how he would develop such cash, or from what source it would be available. Certainly his estimate of income and expenses do not support the accumulation of such amount. Under any Chapter 13 Plan the Debtor must prove with reasonable certainty that he is able to make the payments under the proposed Plan. *Tenney v. Terry*, 630 F.2d 634 (8th Cir.1980); *Georgia Fed. S & L v. Anderson*, 21 B.R. 443 (Bankr.N.D.Ga. 1981; *In Re Dant*, 9 B.R. 117 (Bankr.E.D. Va.1981). The only source of income to the Debtor based on the present record is from his business. It is sheer speculation how the Debtor would fund a 60 month lump sum payment, and thus the Plan cannot be confirmed.

IT IS ORDERED the Debtor's Amended Chapter 13 Plan is denied confirmation, with leave to the Debtor to file an Amended Plan in 15 days, or this case will be dismissed.