**In re Leah FELBERMAN, Debtor.**

**Bankruptcy No. 95–B–20044 (ASH).**

United States Bankruptcy Court,
S.D. New York.

Oct. 17, 1995.

Law Offices of Shmuel Klein by Shmuel Klein, Spring Valley, NY, for Debtor.

Philip, Irwin, Aaron, P.C. by Jules A. Epstein, Syosset, NY, for Creditor First Nationwide Bank.

## DECISION DENYING MOTION TO VACATE FORECLOSURE SALE

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

The Debtor moved for an order declaring a foreclosure sale of the Debtor's house "null and void ab initio", and for sanctions including counsel fees and punitive damages against the creditor and its counsel for alleged violation of the automatic stay. The secured creditor, First Nationwide Bank ("FNB"), opposed the Debtor's motion and cross-moved for sanctions against the Debtor and her counsel.

The Debtor filed her petition under Chapter 13 in this case on January 9, 1995, one day before the fourth foreclosure sale scheduled by FNB. FNB adjourned the sale to March 13 but proceeded with the sale on that date in reliance on an order of this Court (Connelly, J.) dated October 17, 1994 in the third bankruptcy case filed by the Debtor's husband, Aaron Felberman, which contained the following provision:

> D. ORDERED, THAT, in the event the debtor fails to tender the sums due under paragraph A hereinabove, any future filing by the debtor, or any other person or entity with an interest in the subject property, [shall] not operate as an automatic stay against Movant except upon separate order of this court.

The Debtor argues, in substance, that the quoted provision of Judge Connelly's order is not binding upon her because she was not a party to her husband's bankruptcy proceed-

ing and because she did not have knowledge of the order.

At the initial hearing on these motions, I denied the motions for sanctions by both sides but did not rule on the Debtor's motion to vacate the March 13 foreclosure sale. I pointed out to counsel that the Debtor's argument that Judge Connelly's order did not apply to her raised issues not briefed fully (or at all) by the Debtor as to this Court's power to enter the order and as to the professional responsibility of Debtor's counsel. I also pointed out that, in opposing the motion to vacate, FNB had challenged the good faith of the Debtor's filing and the feasibility of her plan. For her part, in person and through counsel, the Debtor asserted that she did not have adequate information with respect to the amount owed by her and Aaron Felberman on the mortgage or the foreclosure judgment. Accordingly, I adjourned the hearing to August 9 and ordered (i) FNB to produce an affidavit by August 1 providing a complete breakdown of amounts owed based on the foreclosure judgment and, alternatively, based on reinstatement of the mortgage, (ii) the Debtor to produce such testimony and documentary evidence as she might be advised to establish the good faith of her filing and the feasibility of her plan and (iii) both sides to submit such further briefing on legal issues as counsel deemed appropriate.

At the hearing on August 9 the Debtor produced testimony of the Debtor and her husband, and four exhibits, being an amended plan, the October 27, 1992 judgment of foreclosure (Exhibit A annexed to FNB's opposition and cross-motion), the 1986 note signed by the Debtor and a check in the amount of $2,130 dated March 9, 1995 which was tendered by the Debtor to FNB and rejected on the eve of the March 13 foreclosure sale.

### The Facts

The Debtor and her husband borrowed $152,000 from FNB in August 1986 and gave FNB a mortgage on their house at 30 Dolson Road, Monsey, New York. The last monthly payment made by the Felbermans under the mortgage was March 1, 1991, almost four and a half years ago. Through August 1, 1995, fifty-three months of arrears at $2,136.96 per month amounts to $112,940.88 [sic—FNB's calculation], not including legal fees and expenses.

A judgment of foreclosure was entered on October 27, 1992 in the sum of $150,912.08, together with additional costs and disbursements, with statutory interest thereon from June 30, 1992. The total indebtedness owed by the Debtor and her husband as of August 1, 1995 by FNB's calculation amounts to $218,878.48, including principal ($127,972.15), interest at 10.5% ($59,347.28), escrow advance by FNB for the payment of real estate taxes ($24,215.58) and legal expenses ($7,343.47), with interest accruing at the rate of $36.81 per day and additional legal fees subsequent to August 1.[1]

The first foreclosure sale was scheduled on January 19, 1993. Aaron Felberman filed a Chapter 13 petition on that date, staying the sale. That case was dismissed by order entered June 1, 1993, and it does not appear that Aaron Felberman ever filed the required schedules or proposed a plan. The second foreclosure sale was scheduled for August 13, 1993. Aaron Felberman filed his second Chapter 13 petition on August 12, staying the sale. On January 13, 1994 the second Chapter 13 case was dismissed. The third foreclosure sale was scheduled on May 25, 1994. Aaron Felberman filed his third Chapter 13 petition on May 24, staying the sale. The third case was dismissed by order dated December 9, 1994.

Prior to dismissal of Aaron Felberman's third Chapter 13 case, FNB sought and obtained a conditional order dated October 17, 1994 granting relief from the automatic stay and containing the provision quoted above nullifying the automatic stay in advance in the event of any future filing by Aaron Felberman or "any other person or entity with an interest in the subject property", the only such person being the Debtor in this case.

---

1. The Debtor disputes FNB's entitlement to legal fees, and I make no finding with respect to such entitlement.

As previously noted, FNB scheduled the fourth foreclosure sale for January 10, 1995, and the Debtor filed her petition in this case on January 9. Acting perhaps with an excess of caution, but commendably, counsel for FNB caused the foreclosure sale to be voluntarily postponed to March 13. The Debtor, notwithstanding this short reprieve, made no application to the Court to challenge the efficacy of Judge Connelly's prospective stay annulment provision as to her, or to seek a separate order imposing the stay in accordance with Judge Connelly's order, or otherwise seeking on any ground to stay the foreclosure sale. Accordingly, FNB proceeded with the foreclosure sale on March 13 and purchased the property itself, since the amount of the secured indebtedness concededly far exceeded the value of the property.

### Discussion

My decision to deny the Debtor's motion to vacate the March 13 foreclosure sale is based upon two, independently-sufficient grounds.

### Judge Connelly's Order

■ Judge Connelly's conditional order of October 17, 1994, quoted in material part above, clearly was predicated upon the Felbermans' failure to make a single mortgage payment since March 1991 and the history of serial bankruptcy filings by Aaron Felberman on the eve of scheduled foreclosure sales, each case being dismissed for failure of the Chapter 13 debtor to comply in any respect with his obligations under the statute, thereby demonstrating bad faith. The courts in this and other Circuits have fashioned a variety of forms of relief from the automatic stay under 11 U.S.C. § 362(d) in order to protect creditors from misuse of the bankruptcy laws by debtors acting in bad faith to interminably prolong their occupation of premises for which they cannot or will not pay and frustrate creditors in the exercise of their contractual and statutory rights. *See In re Eatman,* 182 B.R. 386 (Bankr.S.D.N.Y. 1995) (stay relief granted, chapter 13 case converted to chapter 7 and sanctions awarded against debtor and debtor's counsel upon finding of bad faith filing of petition); *In re Jones,* 41 B.R. 263, 266 (Bankr.C.D.Cal.1984)

(sanctions imposed against debtor and his attorney in case where court had lifted the stay and ordered that the debtor was bound by the judgment and order in any "conversion of the above-entitled bankruptcy proceeding or in any subsequently filed bankruptcy proceeding of any nature whatsoever and as to any future Automatic Stays issued relating to [creditor's] interest in the subject property").

■ The filing of a bankruptcy petition merely to prevent foreclosure, without the ability or the intention to reorganize, is an abuse of the Bankruptcy Code. *Weiszhaar Farms, Inc. v. Livestock State Bank,* 113 B.R. 1017, 1020 (D.S.D.1990); *Cinema Service Corp. v. Edbee Corp.,* 774 F.2d 584, 585–86 (3d Cir.1985); *Roberts v. Heim,* 184 B.R. 814, 818 (N.D.Cal.1995); *In re Huerta,* 137 B.R. 356, 369 (Bankr.C.D.Cal.1992); *In re Trina Associates,* 128 B.R. 858, 872 (Bankr. E.D.N.Y.1991). Serial filings are a "badge" of bad faith, *In re Spectee Group, Inc.,* 185 B.R. 146, 156 (Bankr.S.D.N.Y.1995), as are petitions filed to forestall creditors, *In re Eatman,* 182 B.R. at 392.

■ The challenge courts have faced is what forms of relief can be entered to bring to an end abusive practices by debtors, especially to deal with abuses caused by so-called serial filers. Some remedies include awarding costs and sanctions, *see In re Bono,* 70 B.R. 339, 345 (Bankr.E.D.N.Y.1987) ("Attorneys must be discouraged from becoming partners to such abusive filing"), *In re Bolton,* 43 B.R. 598, 602–03 (Bankr.E.D.N.Y. 1984), awarding prospective relief from the automatic stay, *see In re Abdul–Hasan,* 104 B.R. 263 (Bankr.C.D.Cal.1989), and dismissal of bankruptcy cases, *see In re Prud'Homme,* 161 B.R. 747, 750 (Bankr.E.D.N.Y.1993). In *Prud'Homme,* the mortgagee moved for various forms of relief consisting of: (1) dismissal of the debtor's Chapter 13 case, (2) prohibiting the debtor from filing a further petition for a period of eighteen months or alternatively declaring that any subsequent filing will not operate as a stay against the mortgagee, or (3) granting relief from the automatic stay. The bankruptcy court elected to dismiss the case based on the debtor's lack of good faith in three times filing Chapter 13

petitions on the eve of scheduled mortgage foreclosure sales. In the *Prud'Homme* decision, Judge Holland stated:

The case is one of many filed in this and other bankruptcy courts by debtors who engage in multiple filings with no reasonable likelihood of success solely for the purpose of impeding the legitimate rights of a secured creditor. In the typical case schedules are not timely or indeed ever filed, the debtor does not participate in the proceeding, the debtor fulfills few if any of his or her statutory obligations, but invokes the automatic stay contained in § 362 nevertheless. In addition to the burden placed upon the secured creditor, the court is compelled to utilize its already overtaxed and limited resources to address and readdress a series of filings devoid of any legitimate purpose or prospect of success. (*In re Prud'Homme*, 161 B.R. at 750)

Section 349 governs the effects of dismissal in Title 11 cases, and states in pertinent part:

Unless the Court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title. (11 U.S.C. § 349(a))

Independent from the exceptions provided in section 109(g), section 349(a) allows the bankruptcy court the alternative of conditioning the dismissal of a case with limitations on subsequent petitions where cause exists. The courts' invocation of section 349(a) for dismissal of cases with prejudice against the debtor, and in some cases co-obligor/owner with the debtor, from re-filing a subsequent bankruptcy case within some designated time period appears to be the most controversial remedy frequently employed by the courts. *See Stathatos v. United States Trustee (In re Stathatos)*, 163 B.R. 83, 87 (N.D.Tex.1993) (affirming bankruptcy court's dismissal of Chapter 13 case with prejudice barring re-filing for two years and ordering sanctions against debtors); *Benefield v. United States Trustee*, 1991 WL 542279 (N.D.Tex.1991) (affirming bankruptcy court's inclusion of a one-year injunction in its order of dismissal); *In re Lerch*, 85 B.R. 491 (Bankr.N.D.Ill.1988), *aff'd, Lerch v. Federal Land Bank of St. Louis*, 94 B.R. 998, 1000–01 (N.D.Ill.1989) (district court affirmed dismissal of a Chapter 12 case with prejudice for two years under sections 349(a) and 105(a)); *In re Earl*, 140 B.R. 728, 740 (Bankr.N.D.Ind.1992) (six-month prohibition against re-filing); *In re Doss*, 133 B.R. 108, 110 (Bankr.N.D.Ohio 1991) (one-year prohibition); *In re Walton*, 116 B.R. 536, 541 (Bankr.N.D.Ohio 1990) (two-year prohibition); *Shearson, Lehman Hutton Mortgage Corp. v. Hundley (In re Hundley)*, 103 B.R. 768, 771 (Bankr.E.D.Va. 1989) (one-year prohibition); *In re McKissie*, 103 B.R. 189, 193 (Bankr.N.D.Ill.1989) (one-year prohibition on filing of another case other than Chapter 7, and sanctions of attorney fees and costs awarded against attorney); *In re Walker*, 102 B.R. 612, 614–16 (Bankr.N.D.Ohio 1989) (one-year prohibition and sanctions awarded against debtor to mortgagee for costs and expense); *In re Damien*, 35 B.R. 685, 687 (Bankr.S.D.Fla. 1983) (one-year prohibition).

The difficulty is that debtors have rendered these remedies ineffective from the creditors' point of view by voluntarily dismissing or engaging in conduct (*i.e.,* failure to comply with the requirements of Chapters 13 or 11), leaving the United States Trustee, the Chapter 13 trustee or a creditor to seek dismissal, followed by further filings which repeatedly stay the creditors' remedies. This is partially, but only partially, alleviated by section 109 which makes a particular debtor unable to file again in limited circumstances. Experience shows that, although ineligible, some debtors have filed notwithstanding section 109(g)'s constraint leading to further litigation and time, impeding the creditors' rights.

While many courts have sustained the validity of orders barring the debtor and/or non-debtor co-obligor/owner from future filings, some cases have found that such orders are improper. *See In re Frieouf*, 938 F.2d 1099, 1103 & n. 4 (10th Cir.1991) (the bankruptcy court cannot, in dismissing a case,

limit future access to the bankruptcy court, except as provided in 11 U.S.C. §§ 109(g) and 349(a)), *cert. denied, Frieouf v. U.S.*, 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992); *In re Cooper*, 139 B.R. 736, 739 (D.Colo.1992) (reversing bankruptcy court's decision enjoining debtors from filing another petition for one year); *In re Taylor*, 77 B.R. 237, 240 (9th Cir. BAP 1987), modified by 884 F.2d 478 (9th Cir.1989) (same in dictum). The *Frieouf* opinion has received much criticism, focusing on that court's interpretation of the second part of section 349(a) to mean that courts are constrained in limiting petitioners' rights to re-file. According to the *Frieouf* court, section 349(a) does not permit courts to limit re-filing for a period greater than 180 days, pursuant to section 109. In other words, the *Frieouf* court did not permit the statutory language "[u]nless the court, for cause, orders otherwise" at the beginning of section 349(a) to override the balance of that section.

■ Most courts have rejected this reasoning, concluding that, so long as the dismissing court finds "cause", a bankruptcy action may be dismissed with prejudice to the re-filing of a subsequent petition without violating the terms of section 349(a) or section 109(g)). *See, e.g., In re Stathatos*, 163 B.R. at 87; *In re Jolly*, 143 B.R. 383, 387-8 (E.D.Va.1992), *aff'd*, 45 F.3d 426 (4th Cir. 1994); *In re Earl*, 140 B.R. at 741. Many courts have invoked sections 105 or 349(a) to dismiss a debtor's case with prejudice and at the same time enjoin re-filing for some limited period except with leave of the court. Therefore, the debtor is afforded an opportunity to show the court any change in circumstances which would justify permitting another petition to be filed prior to expiration of the enjoined time period. *In re Madison*, 184 Bankr. 686, 694 (Bankr.E.D.Pa.1995) (six months); *In re Dami*, 172 B.R. 6, 11 (Bankr. E.D.Pa.1994) (six months); *In re Dilley*, 125 B.R. 189, 197 (Bankr.N.D.Ohio 1991) (case dismissed with prejudice with sua sponte prohibition against re-filing for one year without having obtained prior approval of the

court); *In re Dyke*, 58 B.R. 714, 718 (Bankr. N.D.Ill.1986) (court invoked section 349(a) sua sponte to order prohibition against re-filing for six months except on prior leave of the court); *In re Bradley*, 38 B.R. 425, 432 (Bankr.C.D.Cal.1984) (six months).

Judge Connelly's October 17, 1994 order did not raise a *Frieouf* issue because it did not limit either Felberman's access to the bankruptcy court. It simply provided that any future bankruptcy filing by Aaron Felberman or his wife would not result in an automatic stay as to this specific creditor absent separate order of this Court.

The October 17 order does not implicate any Constitutional objection in the circumstances presented here. Aaron Felberman had ample opportunity to object to the order in his own case, and he did so in writing. The Debtor's attorney in this case, Shmuel Klein, Esq., was also counsel for Aaron Felberman in each of his three Chapter 13 cases, and Mr. Klein had ample opportunity to object to the order.[2] Aaron Felberman could have appealed Judge Connelly's order, but he did not do so.

It is true that this Debtor was not a party to her husband's third bankruptcy case. But she had sufficient notice of the foreclosure sale scheduled for January 10, 1995 to enable her to file her petition on January 9, and she could have made an appropriate motion challenging the validity of Judge Connelly's order promptly after filing her case. She could also have applied for a "separate order" providing for a stay as expressly contemplated by Judge Connelly's order. In short, the Debtor had ample opportunity to seek timely legal redress from Judge Connelly's order long before the March 13 foreclosure sale, but she chose not to do so. Stated another way, the Debtor was not deprived of her due process right to seek timely legal redress with respect to Judge Connelly's order—she simply chose not to exercise her due process rights.

The courts have addressed the case of multiple bankruptcy filings by different family members to invoke the protection of the

---

**2.** Mr. Klein has asserted that his attorney-client relationship with Aaron Felberman had, in effect, terminated before the end of Aaron Felberman's third case, but concededly he was and remained Aaron Felberman's attorney of record.

automatic stay and prevent an impending foreclosure on a commonly held property. *See In re Wong,* 30 B.R. 87, 89 (Bankr. C.D.Cal.1983) (court held husband's filing of petition followed by debtor-wife's filing, both solely to stay foreclosure, were an abuse of the bankruptcy code and granted secured creditor relief from stay with court-directed bar against the automatic stay arising from any further chapter 13 bankruptcy proceedings, against the creditor and creditor's assignees or successors, relating to the subject real property). In the case of *In re Kinney,* 51 B.R. 840 (Bankr.C.D.Cal.1985), adult members of one family with interests in the same property filed ten bankruptcy cases in just over two years. The bankruptcy court determined that the family had filed eight of the petitions solely to invoke the protection of the automatic stay.[3] The court held that the actions of each family member should be imputed to the others, and therefore the prior cases dismissed for lack of good faith precluded any subsequent petitions filed by any other family member under the doctrine of res judicata. *Id.* at 845. The *Kinney* court held that "[o]rders binding one family member should bind the others as well. Pursuant to 11 U.S.C. § 105, the Court is able to bind parties even not before it when such a scheme is demonstrated by strong and clear evidence." *Id.* at 846. This analysis has been applied to instances involving a husband and wife, such as presently before this Court. In the case of *In re Ouverson,* 79 B.R. 830 (Bankr.N.D.Iowa 1987), the bankruptcy court granted a mortgagee relief from the automatic stay based upon seven bankruptcies filed between debtor and/or her husband, at least four of which were filed to invoke the automatic stay as to their commonly held property. The court held: "[t]heir concerted, intertwined efforts to prevent [creditor] from realizing on its security can be viewed as the act of one entity." *Id.* at 833, *citing*

*Kinney,* 51 B.R. at 845. Moreover, the *Ouverson* court found that the actions of the debtor and her husband can be imputed to each other "because of the unity of interest (preventing foreclosure) and concert of action." *In re Ouverson,* 79 B.R. at 833.

The Felbermans have engaged in a similar pattern of conduct to prevent FNB from foreclosing on their home. Their long history of non-payment and serial filings simply underscores their unity of interest and purpose and fully justifies Judge Connelly's October 17 order.

■ Little need be said of the Debtor's claim that she did not know of Judge Connelly's order. Assuming that the Debtor did not learn anything of the order from her husband (however implausible that assumption may be[4]), there is no question that the Debtor's attorney knew of the order. As noted above, Mr. Klein had represented Aaron Felberman in the prior three cases. He concededly had full knowledge of Judge Connelly's order and its import and he was not shy about volunteering his knowledge and, indeed, his services to the Debtor.[5] The well-established rule imputing an agent's unprivileged knowledge to his principal, *see Index Fund, Inc. v. Hagopian,* 609 F.Supp. 499, 507 (S.D.N.Y.1985); *In re "Agent Orange" Product Liability Litigation,* 597 F.Supp. 740, 796 (E.D.N.Y.1984) ("the fact that information did not get to a person with final decision-making authority would not be material" in view of agent's knowledge), applies *a fortiori* in the case of the attorney-client relationship, given the enhanced professional obligations of an attorney-agent owed to his client-principal. *See Veal v. Geraci,* 23 F.3d 722, 725 (2d Cir.1994) (finding the relationship between attorney and client is that of principal and agent, and thereby, an attorney's knowledge must be imputed to

3. Each bankruptcy case was filed by the same attorney. The court imposed monetary sanctions against the attorney, whose conduct in advising the family of debtors to file multiple bankruptcies was found to be unreasonable and vexatious. *Id.* at 847.

4. Although the Debtor and her husband both testified that they are "estranged" and "separated", the fact remains that they continue to live in

the same house, they work in the same building in Brooklyn for the same employer and they are united in their legal and economic interests and in their common objective to prevent foreclosure of their common home.

5. Both Mr. Klein and the Debtor stated that Mr. Klein contacted the Debtor in early January to inform her of the foreclosure sale scheduled for January 10 and to tender his services as counsel.

his or her client); *Novak v. TRW, Inc.,* 822 F.Supp. 963, 974 n. 13 (E.D.N.Y.1993).

Even if one could believe that neither her husband nor her attorney informed the Debtor of Judge Connelly's order, nevertheless the Debtor was fully protected by her counsel's knowledge of the order and his professional obligation to advise her based upon that knowledge. There is no dispute that Judge Connelly's order was at the center of Mr. Klein's strategic thinking in this case, as the order was the subject of correspondence between counsel and discussion by telephone among counsel and a member of this Court's staff the week prior to the March 13 foreclosure sale. The Debtor's failure to seek legal redress was the result of the legal strategy chosen by the Debtor's counsel, not lack of knowledge.

### *Lack of Good Faith, Feasibility*

 Even if I were to conclude that the provision in Judge Connelly's order prospectively annulling the stay against the property in question was not enforceable against this Debtor, I should nevertheless deny the Debtor's motion to vacate the March 13 foreclosure sale on the separate and independently-sufficient grounds that the filing in this case was not done in good faith and the Debtor's plan and amended plan are not feasible and do not meet the requirements of 11 U.S.C. §§ 1322 and 1325, particularly section 1325(a)(5). The bank argues that the Chapter 13 plan should not be confirmed because it lacks feasibility. Before a Chapter 13 plan may be confirmed, pursuant to section 1325(a)(6), a court must determine that the debtor is able to make the payments required in the plan. The debtor has the burden of proving that the plan is feasible. *Matter of Endicott,* 157 B.R. 255, 263 (W.D.Va.1993); *In re Erickson,* 176 B.R. 753, 757 (Bankr.E.D.Pa.1995); *In re Hogue,* 78 B.R. 867, 872 (Bankr.S.D.Ohio 1987).

If the meaning of "good faith" as used in section 1325(a)(3) is to be determined by reference to objective facts, as distinguished from the unsubstantiated declarations and assurances of the Debtor or her counsel, this bankruptcy case and the Debtor's plan are patently wanting. The Debtor and her husband have not paid a single mortgage payment on their home for almost four and a half years, with the exception of one monthly payment tendered on the eve of the March 13 foreclosure sale. During this entire period FNB has been required to pay the real estate taxes, amounting to over $24,000. The Debtor's husband filed three consecutive Chapter 13 petitions on the day of or the day before scheduled foreclosure sales, thereby staying the sale, and each of his cases was dismissed in due course for failure to comply with the statutory obligations of a Chapter 13 debtor. Aaron Felberman's recourse to bankruptcy protection was effectively foreclosed by Judge Connelly's October 17, 1994 order. In an attempt to further forestall FNB, the Debtor filed this case, like her husband on the day before the scheduled foreclosure sale. Like her husband the Debtor has not complied with her statutory obligations under Chapter 13, particularly the obligation of payment. Instead of moving promptly in January to litigate the stay annulment provision of Judge Connelly's order, the Debtor waited two full months after the March 13 foreclosure sale to bring on the instant motion, thereby assuring the Debtor and her husband of months of additional occupation of their home, still without paying for it.

The Debtor's amended plan, like her original plan, appears to be financially impossible and does not comply with the statute. Although a principal purpose of the August 9 hearing was to permit the Debtor to provide evidence of the feasibility of her plan, no documentary evidence whatever was submitted to substantiate the existing or projected earnings of the Debtor or her husband which are to fund the plan. The Debtor's Schedule I "Current Income of Individual Debtor(s)" lists current gross wages of the Debtor as $2,166.67 and of Aaron Felberman as $3,466.67. Aaron Felberman testified, however, that his average weekly income is approximately $700, which comes to $3,100 or less per month. The difference of $366.66 exceeds the $319 per month proposed payment to the trustee for the benefit of creditors. The Debtor's budget in Schedule J "Current Expenditures of Individual Debtor(s)" appears to be utterly unrealistic. For

example, monthly expenditures for a family of five including three children ages 13, 10 and 5, list utilities including electricity, heating fuel, water and sewer, telephone, and other at $105; food at $600, or $20 a day; clothing at $60; transportation at $150, although the Debtor and her husband live in Monsey and both work at the same employer in Brooklyn, allegedly travelling separately; "recreation, clubs, and entertainment, newspaper, magazines, etc." at "0". The Debtor's budget reflects a provision for monthly payroll tax and social security deduction for Aaron Felberman of $832, but Aaron Felberman testified that he is working as an independent consultant on Form 1099 required to pay his own taxes, that he has not filed a tax return for the first or second quarters of 1995 and that he has not reserved or set aside any money from his 1995 earnings to pay his income taxes and social security.

Recognizing their inability to make their mortgage payments out of their own earnings, which is apparent on the face of the Debtor's plan and budget, both the Debtor and Aaron Felberman acknowledged that they would require financial assistance from their respective families and both expressed confidence that they would receive the necessary assistance from kin or friends. The Debtor testified that she expected help from her father, a businessman in Canada; Aaron Felberman did not identify the family members who would help him. It is incumbent on the debtor to satisfactorily establish that the contributions are sufficiently "stable and regular" to enable the debtor to make payments under a Chapter 13 plan. *In re Sigfrid,* 161 B.R. 220, 221–22 (Bankr.D.Minn. 1993). It has been held that "as a general proposition, gratuitous payments to a [Chapter 13] debtor by his relatives do not constitute regular income," although there may be unique circumstances when family contributions may be reliable enough to be considered "regular income." *In re Campbell,* 38 B.R. 193, 196 (Bankr.E.D.N.Y.1984) (where proposed plan is to be funded in part by contributions from the debtor's relatives, who were *jointly liable* with the debtor on mortgage, that income is sufficiently stable and regular for court to grant confirmation conditioned on submittal of affidavits demonstrat-

ing their commitment and ability to make such contributions) (emphasis added). Such a unique circumstance does not exist in the case at bar. In fact, it is uniformly held that unsubstantiated expectations of financial contributions from family members or other third parties are not sufficient to meet the feasibility requirement for confirmation. *In re Norwood,* 178 B.R. 683, 691 (Bankr. E.D.Pa.1995) (confirmation denied where plan required gratuitous monthly contributions from debtor's relatives); *In re Fischel,* 103 B.R. 44 (Bankr.N.D.N.Y.1989) (non-debtor's voluntary commitment of his net monthly income held too tenuous to satisfy element of stability). This is particularly so where there is a history of four and a half years of default, a foreclosure judgment, four scheduled foreclosure sales forestalled by four bankruptcy filings and a fifth foreclosure sale which was completed, without one dollar of financial aid to pay the mortgage from either family or friend. No financial undertaking from any family member was offered in evidence and no family member appeared at the hearing on August 9 to testify as to his or her willingness to help.

Even if there were some evidence on which the Court could base a finding that the Debtor and her husband are financially able (and willing) to make the payments called for in the original and the amended plans, neither plan even colorably comports with the statute.

Section 1322(b) provides, in pertinent part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

\* \* \* \* \* \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, . . . .

\* \* \* \* \* \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the

date on which the final payment under the plan is due;

Section 1325(a)(5) states:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

\* \* \* \* \* \*

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

■ As a practical matter, the effect of these provisions would be to require the Debtor either to reinstate the mortgage, pay the monthly mortgage payments outside the plan and pay off the entire mortgage arrears within the plan within sixty months or, alternatively, pay the entire foreclosure indebtedness to date within five years under a plan. Debtor's original plan apparently was designed to reinstate the mortgage and make the monthly payments of $2,134 directly to FNB and to pay the Debtor's and her husband's entire excess income over expenses, $319 a month, through the plan. However, $319 × 60 months = $19,140, and the current arrears under the mortgage are approximately $113,000. The Debtor's amended plan proposes monthly payments of $2,453 (being the sum of the $2,134 and $319 payments provided under the original plan) for fifty-nine months, and a $68,573 balloon payment in the sixtieth month for total payments of $213,300, being approximately the amount of the current indebtedness under the foreclosure judgment with interest, but not including legal fees and expenses. Assuming there were a reasonable expectation that the Debtor and her husband could and would pay $2,453 monthly for the next fifty-nine months, augmented by the amount necessary

to pay the trustee fees, the amended plan makes no provision for the payment of real estate taxes during the next five years, a significant omission considering that FNB has paid over $24,000 in real estate taxes during the past four and a half years. As a court of equity, the bankruptcy court must consider the impact of the stay on parties and consider the "balancing of hurt" in fashioning a remedy. *Fishman v. Epps*, 1980 WL 20451, \*5 (Bankr.S.D.N.Y.1980) (court denied confirmation of plan proposing only one payment to secured creditors as a balloon payment at end of three-year plan period, and granted motions of two secured creditors for relief from the automatic stay where debtor failed to make any mortgage or tax payments for two years), *citing* 2 Collier on Bankruptcy 362–47 (15th ed. 1979). FNB has been paying the taxes and maintenance costs on the property while the Felbermans have failed to make any payments to FNB for the last 4½ years and have lived "rent free" for all this time.

Nor does the amended plan provide for the payment of any interest on the outstanding foreclosure indebtedness during the five-year period. *See Rake v. Wade*, 508 U.S. 464, 467–69, 113 S.Ct. 2187, 2190, 124 L.Ed.2d 424 (1993) (Chapter 13 debtors who cure a default on an oversecured home mortgage pursuant to section 1322(b)(5) must pay preconfirmation and post-confirmation interest on the arrearages under sections 506(b) and 1325(a)(5) of the Bankruptcy Code); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (oversecured creditor's right to post-petition interest under section 506(b) is virtually "unqualified").

Finally, the balloon payment in the sixtieth month is an insuperable barrier to confirmation of the Debtor's amended plan in the circumstances presented here. The only source of such a payment suggested by the Debtor or her counsel was refinancing based on the Debtor's presumed equity in the property at the end of five years. Aside from the lack of any appraisal indicating the current value of the property, the Debtor conceded the obvious fact that no one can predict today five years into the future such matters as the

value of the property, the availability of credit, whether title to the property will be encumbered by judgment liens, or other variables which may have an impact on the ability to make the payment. Relevant case law provides no support for balloon payments in circumstances such as those presented here, *i.e.*, plans requiring the payment of a large sum at the end with no source of funding for the payment in sight. *Matter of Endicott, supra; In re Strober*, 136 B.R. 614, 623 (Bankr.E.D.N.Y.1992); *In re Schenk*, 67 B.R. 137, 140 (Bankr.D.Mont.1986); *In re Crotty*, 11 B.R. 507 (Bankr.N.D.Tex.1981) (debtor must provide definite and credible evidence of ability to make proposed balloon payment for plan confirmation); *see* 11 U.S.C. § 1325(a)(6).

Based upon the objective evidence, I conclude that the Debtor's original plan and amended plan are both patently incapable of confirmation and that the petition in this case was not filed in "good faith" within the meaning of the statute. This conclusion provides the basis for alternative forms of relief, even assuming that Judge Connelly's October 17, 1994 decision could not be properly applied to this Debtor as a non-party to Aaron Felberman's third bankruptcy. For example, it would be possible at this time to lift the stay nunc pro tunc to the March 13 date of the foreclosure sale. *See, In re Kornhauser*, 184 B.R. 425 (Bankr.S.D.N.Y.1995); *In re Omoto*, 85 B.R. 98 (9th Cir. BAP 1986). Alternatively, my conclusion with regard to lack of good faith and feasibility would warrant an order dismissing the Debtor's petition nunc pro tunc to the date of filing. *In re Bresler*, 119 B.R. 400, 402 (Bankr.E.D.N.Y.1990); *In re Villa Madrid*, 110 B.R. 919, 922 (9th Cir. BAP 1990).

 Were it necessary to do so because of the inapplicability of Judge Connelly's order to this Debtor, I would enter an appropriate order lifting the stay or dismissing the petition nunc pro tunc so as to validate the foreclosure sale which has already taken place. Such relief would be required in order that FNB not be needlessly subjected to the delay and expense of scheduling a sixth sale by reason of the Debtor's and her husband's manifest abuse of the process of this Court and the bankruptcy laws. After a state court foreclosure judgment, five scheduled foreclosure sales, four separate cases in this Court over three years, it is time to bring an end to litigation over this creditor's right to foreclose.

The Debtor's motion to vacate the March 13 foreclosure sale is denied. Counsel for FNB is directed to settle an order disposing of the motion and cross-motion in accordance with this decision.