In re Myrna FANTASIA and Louis
Fantasia, Debtors.

The FIRST NATIONAL BANK
OF BOSTON, Appellant,

v.

Myrna FANTASIA and Louis
Fantasia, Appellees.

BAP No. MW 96–072.

United States Bankruptcy Appellate Panel
of the First Circuit.

Aug. 26, 1997.

Kevin J. Simard, with whom Timothy M. Mitchelson and Riemer & Braunstein, Boston, MA were on brief for appellant.

Stephan M. Rodolakis, with whom Mark S. Foss and Peters, Barnhill, Massid & Rodolakis, Worcester, MA were on brief for appellees.

Before GOODMAN, LAMOUTTE and VAUGHN, Bankruptcy Judges.

PER CURIAM.

The debtors filed a Chapter 13 plan and a creditor objected. A non-evidentiary hearing was held and the bankruptcy court amended and confirmed the plan. The creditor alleges that the evidence was insufficient to support a finding that the plan was feasible. After reviewing the pertinent case law and the facts of this case, we find that the bankruptcy court abused its discretion by confirming the debtors' Chapter 13 plan.

## I. FACTS AND PROCEDURAL HISTORY

On April 24, 1992, the debtors, Louis and Myrna Fantasia, obtained a loan in the amount of $614,000.00. The promissory note was secured by a mortgage in favor of The First National Bank of Boston (FNB), as successor of Mechanics Bank, on two properties, the debtors' residence located in Worcester, Massachusetts, and a commercial building located in Milbury, Massachusetts. The bank also obtained additional security in the form an assignment of rents from the Milbury property. Under the terms of the promissory note, the loan matured on April 24, 1995.

The debtors defaulted on the loan and the parties executed a restructure agreement wherein the parties agreed to an outstanding principal of $587,058.18, an annual interest rate of 9.5%, and a monthly payment of $5,682.20 with a maturity date of April 24, 1997. Thereafter, the debtors defaulted and FNB commenced foreclosure proceedings.

The debtors filed a Chapter 13 petition on August 27, 1996. The debtors' Chapter 13 plan estimated FNB's secured claim at $575,000.00 and provided for direct monthly payments to FNB of $5,662.26 based on a 15-year amortization schedule with 8.5% interest rate and "a balloon payment of the balance remaining at the end of a 60–month Plan." The plan was funded by rental income from the commercial property and the debtors' future earned income. It was undisputed that the property lacked equity at the time of the bankruptcy filing.

FNB objected to confirmation of the debtors' plan on the grounds that the debtors failed to treat FNB's secured claim in accordance with 11 U.S.C. §§ 1322(c) and 1325(a)(5) and that the plan did not meet the feasibility requirement of 11 U.S.C. § 1325(a)(6). The bankruptcy court held a non-evidentiary hearing to consider confirmation on November 19, 1996 wherein counsel for the debtors responded to the various objections. After some discussion, the bankruptcy court found that the commercial property would increase in value [1] and confirmed the plan submitted by the debtors with the following amendment: "[t]he interest rate shall be 9 1/2%—regular mortgage amortization—equal payments of principal and interest."

On appeal, FNB reiterates its objections to the plan arguing that no rational basis exists for the bankruptcy court's ruling. In addition, FNB asserts that prior to confirmation the bankruptcy court failed to consider whether a shortfall would result from its modification of the interest rate which would affect the debtors' ability to comply with the terms of the plan.

## II. DISCUSSION

### A. TIMING OF BALLOON PAYMENT

FNB asserts that the bankruptcy court erred as a matter of law by confirming a plan in violation of 11 U.S.C. §§ 1322(c) and 1325(a)(5) which require that a modified secured claim be paid in full during the life of the plan. FNB objects to the phrase "a balloon payment of the balance remaining at the end of a 60–month Plan." According to FNB, that phrase is ambiguous and the bankruptcy court erred by not addressing at confirmation the timing of the payment of FNB's claim under the plan. We find no error in the bankruptcy court's actions. Given the language of the debtors' plan and the law regarding payment of modified secured claims during the life of a plan, we find that the provision in question is not ambiguous. Pursuant to the plan, the debtors are to make the balloon payment during the life of the plan by paying the balance due on the sixtieth month.

### B. FEASIBILITY

■ The crux of this appeal turns on whether the plan, as confirmed, is feasible. As FNB raised valid objections based on feasibility, the debtors had an obligation to respond with evidence to rebut these objections. Their failure to respond with evidence left the court with insufficient evidence to support confirmation. Accordingly, the bankruptcy court abused its discretion in confirming the debtors' Chapter 13 plan.

■ The standards for confirmation of a Chapter 13 plan are found in 11 U.S.C. § 1325(a); subsection (6) addresses feasibility.[2] Feasibility is a factual determination

---

1. The bankruptcy court relies upon debtors' counsel's assertion that the commercial property is located nearby the intersection of Routes 20 and 146 and the "proposed" interchange of the Massachusetts Pike. In this regard, the bankruptcy court stated:

   Well, frankly, I think the market value of this property is going to go up. We're talking about five years from now, and I think it's going to go up because I think market values are going up, and that's not a brilliant conclusion. Market values are depressed now, and this area, 146, will certainly be enhanced in value. That interchange will be there, so I think there will be enough equity there to—value cushion there to permit refinancing in any event.

   Appendix at 106.

2. 11 U.S.C. § 1325(a) provides:

   Except as provided in subsection (b), the court shall confirm a plan if—

   (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

   (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

   (3) the plan has been proposed in good faith and not by any means forbidden by law;

   (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

   (5) with respect to each allowed secured claim provided for by the plan—

     (A) the holder of such claim has accepted the plan;

     (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

and the bankruptcy court's decision will not be disturbed absent a firm conviction that clear error has been committed. Fed. R. Bankr.P. 8013; 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 5.56 (2d ed.1994); *see* 8 Lawrence P. King et al., *Collier on Bankruptcy,* ¶ 1325–07 (15th ed.1997) ("[b]y far the most important criterion for the confirmation of a chapter 13 plan in terms of promoting the success of chapter 13 proceedings is subsection 1325(a)(6)'s requirement that the court determine whether the chapter 13 debtor will be able to make all payments under the plan and comply with all other provisions . . .").

■ Confirmation of a Chapter 13 plan requires more than a ministerial review; rather, bankruptcy judges should exercise their judicial discretion and assess the evidence to ensure that it meets the guidelines established by section 1325. *Fidelity & Casualty Co. of N.Y. v. Warren (In re Warren),* 89 B.R. 87 (9th Cir.BAP 1988). To satisfy feasibility, a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan. 11 U.S.C. § 1325(a)(6); *In re Brunson,* 87 B.R. 304, 312 (Bankr.D.N.J. 1988). The debtor carries the initial burden of showing that the plan is feasible. *In re Felberman,* 196 B.R. 678, 685 (Bankr. S.D.N.Y.1995); *In re Endicott,* 157 B.R. 255, 263 (W.D.Va.1993). Before confirmation, the bankruptcy court should be satisfied that the debtor has the present as well as the future financial capacity to comply with the terms of the plan. *In re Crotty,* 11 B.R. 507, 511 (Bankr.N.D.Tex.1981) (a definite declaration as to the source and amount of funds necessary to enable debtors to make payments under the plan is required).

## 1. BALLOON PAYMENT

■■ The inclusion of a balloon payment is not dispositive of a plan's feasibility. Confirmation of such a plan is suspect, however,

unless some proof is offered to show that the funds will be available at the time the balloon payment is due. *In re Gregory,* 143 B.R. 424, 426 (Bankr.E.D.Tex.1992) (propriety of balloon payment should be considered under the totality of the circumstances); 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 5.56 (2d ed.1994); see also 5 William L. Norton, Jr. et al., *Bankruptcy Law and Practice* § 122:9 (2d ed.1994) (feasibility of a plan with a balloon payment scheme depends on the debtor demonstrating that the funds will be available at the time the payment is due).

■ To avoid potential abuse, debtors must show by definite and credible evidence that they will have the financial ability to make the balloon payment. *Crotty,* 11 B.R. at 511. While it is impossible to predict with absolute certainty, mere speculation as to the source of funds is not sufficient to satisfy feasibility. *In re Harris,* 199 B.R. 434, 436–37 (Bankr.D.N.H.1996). In some cases, bankruptcy courts have relied upon the following factors, or a combination thereof, when considering confirmation of a plan which contains a balloon payment:

1) the equity in the property at the time of filing;

2) the future earning capacity of the debtor;

3) the future disposable income of the debtor;

4) whether the plan provides for the payment of interest to the secured creditor over the life of the plan;

5) whether the plan provides for payment of recurring charges against the property, including insurance, local property taxes and utility charges; and

6) whether the plan provides for substantial payments to the secured creditor which will significantly reduce the debt

---

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or (C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

and enhance the prospects for refinancing at the end of the plan.

*Brunson,* 87 B.R. at 312.

■ In the case under consideration, it is undisputed that no equity existed in the property at the time of the bankruptcy filing. Furthermore, the debtors indicated their intent to fund the balloon payment by refinancing the commercial property located in Milbury. Also undisputable but not conceded by the debtors, is the fact that, although debtors' counsel referenced the expressed intent of a lending institution to refinance the property, no documents and/or testimony were admitted supporting these assertions. The record indicates that evidence on this point was neither presented at the hearing nor filed with the plan.

The debtors have failed to meet their burden by showing that they would have funds available to make the balloon payment. *Endicott,* 157 B.R. at 263 (where the secured property lacks equity and the balloon payment is not funded through future income, failure to present evidence as to the likelihood of refinancing makes the plan infeasible); *In re Schenk,* 67 B.R. 137, 140 (Bankr. D.Mont.1986) (debtor must show with reasonable certainty that he will be able to make the proposed lump sum payment at the end of the plan prior to confirmation of the plan).

## 2. INCOME

■ FNB also argues that the plan is not feasible because the debtors' projected income is insufficient to fund the plan. Noting that the plan provides the debtors with only a $40.00 per month cushion, FNB argues that the plan is not feasible as it does not take into account potential shortfalls that could be created by future vacancies in the commercial property. FNB indicated that three tenants of the Milbury property were at will and the remaining two held leases which had expired in 1996. In addition, FNB also raised an issue regarding the non-payment of rent by F & G Enterprises who is in a Chapter 11 proceeding. Debtors' counsel indicated that the leases have not been renewed due to tenant concern generated by foreclosure proceedings initiated by FNB. Although not involved in the bankruptcy of F & G, debtors' counsel further stated that its Chapter 11 case was progressing well.[3]

Moreover, FNB, asserts that the plan is mathematically incorrect as the debtors have inflated the rental income used to fund the plan. The debtors' plan indicates rental income of $7,700 per month with a $1,000 tax liability. However, FNB argues that these figures are not correct as it received pre-confirmation payments of only $5,700 and $5,800 per month rather than $6,700 per month. Debtors' counsel responded by confirming the accuracy of the figures in the debtors' schedules when filed and by further asserting, without presenting any evidence, that the current monthly rental income was actually $8,500 with an expectation of $10,500 in monthly rental income in the near future.

Although it is impossible to predict a plan's success with absolute certainty, an examination of the potential problems in a plan is useful. *See, e.g., In re Groff,* 131 B.R. 703, 708–09 (Bankr.E.D.Wis.1991) (upon consideration of all facts, the court found that potential obstacles to debtors' plan do not make the plan unreachable). There is no doubt that FNB identified serious problems with the plan that would impact the debtors' ability to comply with its terms and debtors' attorney responded to the objections without submitting evidence which could have easily substantiated the debtors' assertions in support of confirmation.[4] *Felberman,* 196 B.R.

3. The bankruptcy court inquired as to the progress of F & G Enterprises' bankruptcy case to which debtors' counsel emphatically responded that it was going well and that there were ongoing negotiations with several sources to finance a buy-out of FNB's claim. Counsel also suggested that a higher paying tenant could displace F & G and/or F & G would provide funds to the debtors for the FNB claim if a shortfall resulted alleging that F & G is "solvent" and would repay the debtor for salary not taken during the "lean years in the nineties." However, no evidence was submitted supporting these assertions.

4. For example, in response to questions on the rental income, the debtors needed only to produce an accounting of the rent paid and/or evidence of negotiations of other rental agreements as suggested by counsel. Furthermore, debtors' counsel's fallback position to every objection was the assertion that the construction of the turnpike interchange would cause the debtors' prop-

at 685–86. We find that the debtors have not demonstrated their ability to make all payments under the plan and comply with the terms of the plan as required by section 1325(a)(6).[5]

## 3. INCREASED INTEREST RATE

FNB also asserts that the amended plan may not be feasible because the debtors' disposable income may be insufficient to provide payment of the additional percentage point in the interest rate ordered by the bankruptcy court at the confirmation hearing. With only $40.00 in excess monthly income under the plan, there may be some validity to this argument which should be addressed by the bankruptcy court upon remand.[6]

## C. FNB'S FAILURE TO DEMAND EVIDENTIARY HEARING

■ On appeal, the debtors argue that the failure of FNB to request an evidentiary hearing pursuant to Local Bankruptcy Rule 26(G) and (H)[7] constitutes a waiver of FNB's argument on appeal that the debtors failed to present evidence at the confirmation hearing to counter FNB's objections. This assertion lacks merit. On its face, Local Bankruptcy Rule 26(G) and (H) applies to requests for hearings in the context of motions or oppositions to motions. The bankruptcy court was not faced with a motion or an opposition to a motion in this case. Rather, FNB filed an objection to the confirmation of the debtors' Chapter 13 plan. Accordingly, Local Bankruptcy Rule 26(G) and (H) is inapplicable. FNB did not waive its right to an evidentiary hearing.

## III. CONCLUSION

For the above reasons, we VACATE the confirmation order issued by the bankruptcy court and REMAND the case for further

---

erty value to increase, thereby, increasing rental income and the ability to refinance. However, the record is devoid of any essential facts of the "proposed" construction, e.g., dates of construction, length of time, impact of construction, proximity to the debtors' property, projected valuation, and demand for property in the area, which would permit meaningful review.

5. FNB also argues that feasibility issues arise should the court find that its claim should be paid through the plan insofar as the plan fails to take into account the Chapter 13 Trustee's statutory fees. At the hearing, the Chapter 13 Trustee indicated her intention to object to FNB's claim being paid outside the plan. While the bankruptcy court initially indicated reluctance to decide the issue as it had not been fully briefed, a ruling was ultimately issued in order to expedite confirmation. At that time the bankruptcy court informed the parties that the issue may be raised for additional consideration at a later date upon request of a party. To our knowledge, the issue was not reopened. FNB has raised it on appeal as it may affect feasibility. Because the case will be remanded, we refrain from reviewing this issue at this time.

6. FNB also argues, and we agree, that the bankruptcy court's ruling is contradictory as to which amortization schedule to be utilized. Rather than an issue for appeal, however, this is clearly a misstatement that simply requires clarification by the bankruptcy court.

7. Local Bankruptcy Rule 26(G) and (H) provides:

(G) Request for Hearing.

(1) Any party making or opposing a motion who believes that oral argument may be of assistance to the court and who wishes to be heard shall include a request for oral argument.

(2) A request for oral argument shall state the amount of time which the party believes will be necessary for both parties to be heard. The request may also include a brief statement of the reasons why the party believes that oral argument is desirable. The request shall also indicate whether or not evidence in the form of live testimony will be presented on the motion.

(3) If the court decided a motion without hearing or opportunity for opposition, any party may file a motion within ten (10) days of the mailing or other notice of the court's order, requesting reconsideration of the action taken by the court and a hearing.

(H) Hearing.

(1) A hearing will not be required for the disposition of any motion except:

(a) motions for lien avoidance under 11 U.S.C. § 522(f); and

(b) motions where a statute or rule expressly requires a hearing.

(2) If the court concludes that there should be a hearing on a motion, the motion will be set down for hearing at such time as the court determines. Unless the notice of hearing issued by the court indicates otherwise, the hearing shall be non-evidentiary.

(3) The moving party shall give notice of the hearing to all parties entitled thereto under the Bankruptcy Code, Bankruptcy Rules, Local Rules, or an order indicating the parties to whom notice shall be given.

proceedings on the issue of the debtors' ability to comply with the terms of the plan as amended by the bankruptcy court.

SO ORDERED.