**In re James Andrew CROTTY, Sr., et ux. Claudia Anna Crotty, Debtors.**

**Bankruptcy No. 480–00523.**

United States Bankruptcy Court,
N. D. Texas,
Fort Worth Division.

June 9, 1981.

St. Clair Newbern, III, Fort Worth, Tex., for Crotty.

M. Bruce Peele, Attorney, Tax Division, Dept. of Justice, Dallas, Tex., for I.R.S.

## MEMORANDUM WITH RESPECT TO A CONDITIONAL ORDER DENYING THE IRS OBJECTION TO CONFIRMATION

JOHN FLOWERS, Bankruptcy Judge.

The Debtors, James and Claudia Crotty, have proposed a plan of debt adjustment under Chapter 13 of the Bankruptcy Code. The Internal Revenue Service has filed an objection to confirmation of the proposed plan. I will deny the Government's objection pending a determination of the Debtor's actual tax liability and conditioned upon the Debtor's modification of their plan so as to comply with the criteria set forth herein.

The Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code on November 6, 1980. The Debtors are residents of Tarrant County, Texas. The Government filed its proof of claim on March 11, 1981, which is prima facie evidence that the Debtors owe the Government $17,668.91 for taxes, penalties and interest arising under the Internal Revenue Code, see 11 U.S.C. § 502(a). The Government's proof of claim reflects that the

Debtors failed to pay taxes which accrued during their 1975 and 1976 tax years. The Government has filed its claim as secured. The Debtors have objected to the Government's claim alleging that the actual tax liability is $7000.00 and further challenge the Government's secured status. Pending resolution of the Debtor's actual tax liability, this memorandum will address various issues relating to confirmation of the Debtor's Chapter 13 plan.

## I.

*Is the Debtor required to provide for full payment of the tax claims pursuant to § 1322(a)(2)?*

Section 1322(a)(2) requires the debtor to provide for the full payment in deferred cash payments of all claims entitled to priority under Section 507 of the Code. Section 507 of the Code creates a priority for allowed unsecured claims of governmental units, to the extent that such claims are for a tax on income for a taxable year ending on or before the date of the filing of the petition for which a return, if required is last due, including extensions, after three years before the date of the filing of the petition. Any unpaid trust fund taxes (employee's share) are also accorded priority treatment regardless of age.

 The Debtors filed their petition on November 6, 1980. The Debtor's tax years within the purview of the priority statute relating to the income taxes are 1977, 1978 and 1979. To the extent Government's tax claims arise against income earned by the Debtors prior to the 1977, the tax claims are not entitled to priority treatment. Furthermore, as the Government has filed its entire claim as secured, it is not entitled to treatment under Section 507 which grants priority only to *unsecured* claims of governmental units. (emphasis added)

## II.

*Must the Debtors propose to pay the Government's claim in accordance with § 1325(a)(5) of the Code?*

Insofar as secured claims are dealt with in a plan, a condition to confirmation is that the value, as of the effective date of the plan, of property to be distributed under the plan on account of such secured claims is not less than the allowed amount of such claims, 11 U.S.C. § 1325(a)(5).

Section 506 of the Code sets forth the method for determining secured status. An allowed claim of a creditor secured by a lien on property in which the estate has an interest is a secured claim only to the extent of the value of such creditor's interest in the estate's interest in such property, and the balance of the claim if any is unsecured. Of course if the value of the collateral exceeds the debt as here the entire allowed claim is secured.

The Government is granted a lien upon the Debtor's property for unpaid taxes pursuant to 26 U.S.C. § 6321. The government's statutory lien is subject to attack under section 545(2) of the Code, which permits the trustee to avoid a statutory lien that is not perfected on the date of filing of the petition against a bona fide purchaser, whether or not such a purchaser exists. Federal tax liens are perfected pursuant to 26 U.S.C. § 6323 by filing a proper notice in the case of real property in the recording office of the county where the property is situated. The exhibits to the Government's claim show it has perfected a lien against the Debtor's property by filing notices of a federal tax lien in the Tarrant County Clerk's Office. To the extent the Government's tax liens created pursuant to 26 U.S.C. § 6321 are not perfected, the liens may be avoided, and the Government's avoided tax liens would not be subject to the protections afforded secured creditors by § 1325(a)(5) of the Bankruptcy Code.

 The exhibits reflect that the Government has perfected a lien for the amount of taxes it alleges is owed by the Debtor. The estate's interest in the property that secures the debt is admitted by the Debtor to be valued at $60,000.00. Consequently a determination of the actual tax claim held by the Government will establish the value of its statutory lien. The present value of the

lien must be paid pursuant to the terms of § 1325(a)(5) of the Code. As the Debtor proposes to retain the property and pay off the debt over five years, the Government is entitled to receive an interest factor to assure that it receives the present value of its secured claim. I concur with the reasoning in *In re Ziegler*, 6 B.R. 3 (Bkrtcy.S.D.Ohio, 1980) insofar as the determination of an appropriate interest factor on tax claims of the Federal Government is to be made by reference to the interest rate established pursuant to 26 U.S.C. § 6621.

The Debtors have asserted that the Government is not protected under § 1325(a)(5) of the Code because the Government is not the holder of a "security interest" in the Debtor's property. A "security interest" is a lien created by agreement, 11 U.S.C. § 101(37). The Government's lien arises not by agreement but solely by force of statute, 11 U.S.C. § 101(38). However the confirmation standard set forth in section 1325(a)(5) uses the term "secured claims," and such term is not equivalent to a "security interest." The value of a secured claim is determined pursuant to section 506 of the Code. The creditor's status as secured under section 506 is contingent upon the creditor holding a lien on property in which the estate has an interest. It is immaterial for the determination of secured status whether the lien was created by agreement, statute or judicial process. The term "security interest" is used in a limited fashion in Chapter 13 to denote a particular kind of lien on the debtor's principal residence which is incident to a debt that may not be modified, see § 1322(b)(2).

Upon fixing the Debtor's actual liability on the Government's tax claim, confirmation of the Debtor's plan is conditioned upon the Debtors proposing to pay the secured portion of such claim in full over the five year term of the plan plus simple interest on the outstanding balance at the rate of 12% per annum.

### III.

*Is the Debtor's Chapter 13 plan proposed in good faith?*

The Government challenges the Debtor's good faith with the argument that the Debtors filed the Chapter 13 case to delay the Government from foreclosing its lien on the Debtor's residence. The Government contends that good faith requires the Debtor either to abandon the residence to the trustee for liquidation pursuant to § 521(3) of the Code, or to exempt the residence out of property of the estate pursuant to § 522(b). Once exempted, the Government contends it is no longer stayed from foreclosure pursuant to § 362(a)(3). The Government argues that the Debtor's use of a Chapter 13 plan to postpone their duty to either abandon or exempt the residence evidences that the plan is proposed in bad faith.

The Government's bad faith argument is easily dismissed. Section 1306(b) of the Code provides that the Debtor shall remain in possession of all property of the estate. The legislative history reflects that § 1306(b) supercedes the application of § 521(3) in Chapter 13 proceedings, Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 141, U.S.Code Cong. & Admin.News 5787. In Chapter 13 the Debtors have no duty to turn over their property to the trustee for liquidation.

The fact that the Debtors have filed a Chapter 13 proceeding to stay the foreclosure of their residence is, of itself, insufficient evidence of bad faith so as to preclude confirmation of their debt adjustment plan. As was stated in *In re Thacker*, 6 B.R. 861, 865 (Bkrtcy.W.D.Va.1980), "Indeed, the bottom line of most Chapter 13 cases is to preserve and avoid foreclosure of the family home."

Much of the litigation arising under section 1325(a)(3) has been over whether the concept of "good faith" is a quantitative standard that is intended to protect unsecured creditors. Compare *In re Burrell*, 6 B.R. 360 (Dt.Ct.N.D.Cal.1980) which suggests that "best efforts" and "substantial payments" to unsecured creditors are elements of good faith with *Matter of Wig-*

*gles,* 7 B.R. 373 (Bkrtcy.N.D.Ga., 1980) which applies the qualitative standards "honesty of purpose" and "full and complete disclosure."

■ I find that the Debtor's plan complies with the "good faith" standards enunciated in both the *Burrell* and *Wiggles* decision. I find the plan has been proposed with a valid rehabilitative purpose in that the Debtor seeks to exercise rights and perform duties that would not arise in a Chapter 7 liquidation and thus is not a mere disguised liquidation case. Consequently the Government's § 1325(a)(3) objection is overruled.

## IV.

*Will the Debtor be able to make all payments under the plan and to comply with the plan?*

The Debtors propose to pay to the Trustee from future earnings on a monthly basis, the initial periodic sum of $100.00, and continuing for sixty (60) months thereafter, with annual increases of $50.00 per month except that on the sixtieth month Debtors will pay to the Trustee such sum of money as is necessary to pay in full all allowed priority and secured claims and $500.00 to unsecured creditors. The amount of the balloon payment can be calculated when the Government's tax claim is fixed.

Once the amount of the balloon payment is calculated, then the Court is to determine whether or not the Debtor will be able to make all payments under the plan including the balloon payment. If it appears that the Debtors have insufficient income and property to meet the proposed payment, the plan will not be confirmed.

■ The Statement of Affairs attached to the Debtor's Petition for Relief under Chapter 13 reflects that the Debtors' monthly take-home pay is $1069.08. The estimated average monthly expenses are stated to be $1369.08. At the confirmation hearing held on March 23, 1981 the Debtors testified that they expect an increase in their income that would enable them to make the payments. I find that section 1325(a)(6) requires a more definite declaration of the source and amount of their increased income.

Consequently, in order to confirm the Debtor's plan I will require that the Debtors amend their Statement of Affairs so as to show that their monthly take-home pay will exceed the estimated average monthly expenses at least to the extent of $100 per month during the first year of the plan. Hope springs eternal, but something more concrete must be shown to establish their take-home pay will continue to exceed expenses in an amount sufficient to cover the annual payment increases in their proposed plan. As stated in *In re Hockaday,* 3 B.R. 254 (Bkrtcy.S.D.Cal., 1980), the Court must be satisfied that the Debtor has not only the present ability, but the future ability to comply with the proposed plan.

The Court must also find that the Debtor will be able to make the proposed balloon payment. Assuming that the proposed balloon payment will substantially exceed the regular payments under the plan, the Debtors must reveal in their amended plan if they intend to fund the balloon payment from a source other than future income. For example, if the Debtors intend to fund the balloon payment using the proceeds from the sale of their residence,[1] this proposal must be disclosed in order to determine whether there will be sufficient proceeds to fund the payment.

■ Although the Code does not expressly preclude a Debtor from proposing a Chapter 13 plan that culminates in a balloon payment, I find that the Debtors must show by definite and credible evidence that they will be able to make the balloon payment. This is required because a potential for abuse exists with Chapter 13 balloon payment plans. A Debtor has an absolute right to dismiss a Chapter 13 case[2] and

---

1. House Report No. 95–595 at 123 U.S.Code Cong. & Admin.News 1978, 5787 recognizes that the debtor may propose to liquidate property to pay debts in Chapter 13.

2. 11 U.S.C. § 1307.

could do so shortly before the balloon payment becomes due. The Debtor would have the right to file a subsequent Chapter 13 case and in theory could provide to repay the "balloon payment" which survived the prior case over the term of the subsequent case. Congress did not intend Chapter 13 as a device to indefinitely delay the payment of allowed claims, see 11 U.S.C. § 1322(c).

## V.

### *Final Disposition*

After the Debtor's actual tax liability is determined, the Debtors are allowed thirty days to propose an amended plan of debt adjustment consistent with the conclusions announced herein. Confirmation of any such amended plan will then be considered.