In the Matter of Dale M. McCLAFLIN and Sylvia P. McClaflin, Debtors.

Bankruptcy No. 80 B 01368.

United States Bankruptcy Court, N. D. Illinois, W. D.

June 18, 1981.

James Keeling, Rockford, Ill., for Powell and Gonzini.

Kenneth Ritz, Rockford, Ill., for the McClaflins.

## MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on the Objections of Ronald Powell and Peter Gonzini, Creditors, to Confirmation of the Chapter 13 Plan proposed by Dale M. and Sylvia P. McClaflin, Debtors.

\*     \*     \*

*Essential Features of the McClaflin Plan*

For a period of 5 years:

1) First mortgage to be paid outside the plan.

2) Powell, fully secured claim, $24,000 plus interest, to be paid at the rate of $400 per month outside the plan, with balloon payment of balance of principal and interest due at the end of 5 years. (Note: At 20% interest the principal will not be reduced.)

3) Powell and Gonzini, unsecured claims, $30,000, to be paid 10% by payments of $75.00 per month through the Chapter 13 Trustee.

\*     \*     \*

Attorney Keeling has offered a laundry list of objections to the plan. Stated below are those objections with the Court's analysis.

*Objection 1*: The secured claim of Powell cannot be modified under Section 1322(b)(2) because the claim is "secured only by a security interest in real property that is the debtors' principal residence".

*Analysis*: Powell's secured claim was originally the indebtedness of Powell and Dale McClaflin to Exchange National Bank of Chicago, secured by a lien on the debtors' residence and real estate owned by Powell. Now that Powell owns the note and security agreement (by assignment from Exchange Bank) the only security available to Powell is the debtors' principal residence. Having your own home as security for a note owed to you by a third party is the equivalent of having no security at all. The security interest in Powell's real estate merged into Powell's ownership when Powell, the debtor of Exchange Bank, became Powell, the creditor of McClaflin.

The use of the word "only" in Section 1322(b)(2) produces the ironic and unjust result, surely not intended by the drafters if they had thought about it, that a creditor with less collateral (for example, a second mortgage on the debtor's home) may be in a more favorable position than if the same creditor had more collateral (for example, the same real estate mortgage plus personal property as additional collateral).

■ To construe the controversial word "only" in a way that would deny Powell the standing of a creditor whose claim is secured only by a security interest in property that is the debtors' principal residence would result in an even greater irony and injustice not intended by Congress. The property contemplated in the phrase "security interest in property" should not include property owned by the creditor himself and not in the debtor's estate.

*Objection 2*: Powell is entitled to interest at the rate provided in the note, "P plus 4½".

*Analysis*: If Powell's rights cannot be modified, as described above, the plan must provide interest at the rate provided in the note.

(The debtors' plan proposes no specific rate of interest, but the debtors have suggested at trial that a range of 14% to 16% would be appropriate. The better practice is that the plan propose a specific rate of interest. If the Court then sees fit to exercise a "line veto" and amend the interest rate, it may do so.)

*Objection 3*: No cause has been shown to approve a period longer than 3 years under Section 1322(c).

*Analysis*: A 5 year plan appears necessary to minimize the monthly payments required to satisfy the 10% dividend to unsecured creditors. A 5 year plan also postpones for 2 additional years the inevitable arrival of the balloon. The Court is not overly impressed that those factors constitute good cause for an extension beyond 3 years. It might be different if the additional 2 years enabled the debtor to achieve a 70% payment of unsecured debts as described in Section 727(a)(9)(B), or if the additional 2 years were required to completely retire, rather than merely postpone, the Powell secured claim.

*Objection 4*: Unsecured creditors will receive less under Chapter 13 than under Chapter 7. Section 1325(a)(4).

*Analysis*: To arrive at such a conclusion necessarily requires an exercise in speculative computation. It does appear, however, that unsecured creditors would receive $7000 (less administrative expenses) within a year under Chapter 7, but only $3000 over 5 years under the plan:

| | |
|---|---|
| $91,000 | Value of real estate |
| 69,000 | Encumbrances |
| $22,000 | Balance |
| 15,000 | Exemptions |
| $ 7,000 | Equity |

Therefore, based on the only figures in evidence, the objection is well taken.

*Objection 5*: The plan is not proposed in good faith. Section 1325(a)(3).

*Analysis*: Good faith is not defined in the Code. The elements of good faith have not been developed judicially with any consistency. Plans proposing no payments or nominal payments have been greeted with disapproval by most courts dealing with the issue, including those at the appellate level. Those judges who confirm nominal payment plans decry the concept, but refuse to perform "judicial legislation". Inevitably, when legislators don't legislate, courts do.

This Court has held that a 10% plan, absent extraordinary circumstances, inherently lacks good faith. In an earlier case, this Court confirmed a 1% plan where the exclusive goal of the debtors was to preserve their residence. "Save the home" plans and "forced reaffirmation" plans, which provide little or nothing for unsecured creditors, continue to be filed, but they are, and should be, construed very strictly and confirmed only when there is no opposition by the Trustee or creditors and when all the other elements of a confirmable plan are solidly intact. Unless the present trend is reversed at the appellate level, nominal payment plans are destined to go the way of the title "Referee".

*Objection 6*: The plan is not feasible. Section 1325(a)(6).

*Analysis*: The payments proposed by the debtors constitute their best effort. The problem is that the payments proposed may constitute more than the debtors' best efforts can produce. It is a close question, and again speculative.

The debtors list only two unsecured creditors. (If there are others in existence the plan should be denied confirmation due to dissimilar treatment of claims under Section 1322(a)(3).) Unknown, but predictable expenses such as medical bills and the cost of maintenance or replacement of property owned by the debtors are not included in their budget, and there is little or no room to maneuver. Nevertheless, if all other elements required for confirmation were present, a pessimistic outlook on this issue would be inappropriate.

*Objection 7*: The balloon payment.

*Analysis*: Attorney Keeling suggests that the proposed balloon payment at the end of the 5 year plan offends both the good faith and feasibility requirements of the Code.

No provision in the Code specifically authorizes the balloon payment approach. On the other hand, no provision in the Code specifically bans it, leaving the matter to the discretion of the Court under the circumstances in each case.

Here, on the positive side, Powell would retain his lien and be paid "present value". Moreover, unless the real estate market suffers a collapse, there is no reason to believe that the value of Powell's security will fall below the amount owed to him, particularly if the monthly payments to Powell satisfy accruing interest in full (an accomplishment which is doubtful, however, at "P plus 4½").

The full amount of Powell's claim is now due. In effect, the debtors propose to "cure the arrearage" in 5 years. No cases have been cited in which a court permitted the debtor to cure an arrearage over so long a time. Nor have any cases been cited in which a court permitted the debtor to postpone for any length of time reduction of the arrearage principal. The foreclosure cases provide a rough analogy. See *In re Pearson*, 4 CBC 2d 57.

Refinancing the balloon in 5 years is uncertain, but possible. Even if it were certain, the length of time in which payment on principal is postponed is unfair to Powell. In a Chapter 7 Powell would have his claim paid in full within, say, 6 months and the money would be available for reinvestment. Forcing a reaffirmation of the Powell claim under the terms proposed is understandably not acceptable to Powell and should not be permitted by this Court.

In addition to the "save the home" cases and "forced reaffirmation" cases there is another identifiable genre of cases emerging, the so-called "anticipation" cases. These include the debtor who can only pay $25 per month now but will increase the amount to $100 per month in 6 months and $200 per month in one year. Another variation is the husband and wife who haven't made their $250 monthly mortgage payment for a year, and haven't saved a penny during that time, but now, without a change in financial circumstances, propose a plan whereby they will suddenly begin paying $250 per month toward the arrearage plus $250 a month toward current payments.

This case is an extreme example of the "anticipation" cases: The debtors cannot pay anything on the principal of $24,000 for

5 years, but at the end of 5 years they will pay it all at once. One appalling thought is that if the plan is confirmed and the debtors fail to obtain refinancing of the balloon at the end of 5 years they might file a new Chapter 13 to keep Powell at bay for another 5 years.

## CONCLUSION

This case illustrates one of the uses to which Chapter 13 is attempted to be put by imaginative counsel representing desperate clients.

The role of the Bankruptcy Court is quite different under the Code, compared to what it was under the Bankruptcy Act because of the elimination of the rights of creditors to vote on acceptance of the debtor's proposed plan. Specific confirmation standards under Section 1325 operate as the type of control which creditor enfranchisement did under the Act. In the application of these standards, the Bankruptcy Courts have differed in their interpretations both of the meaning of the statute and the intent of Congress. Statutory ambiguity being directly proportional to judicial discretion, it is not difficult to visualize a court rationalizing away each of Attorney Keeling's objections.

▇▇▇ Nevertheless, this Court numbers itself among those who do not believe Congress intended a Voluntary Petition in Chapter 13 to be a carte blanche document permitting a debtor to deal with his creditors in any manner he sees fit. In the absence of creditor voting, minimum standards of confirmation, both objective and subjective in nature, must exist. In the McClaflin plan those minimum standards are not met. The Court, therefore, concludes the Chapter 13 plan of Dale and Sylvia McClaflin should not be confirmed.

An Order consistent with this Memorandum Opinion is filed herewith. A hearing to show cause why this case should not be converted to Chapter 7 or dismissed is set in accordance with the enclosed notice.