**In re Gerald R. HARRISON,**
**Chapter 13 Debtor.**

**Bankruptcy No. 96–31492–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Sept. 27, 1996.

Bruce Clark, Hopewell, VA, for Debtor.

Sheila A. Kelly, Colonial Heights, VA, for Movant.

Robert E. Hyman, Chapter 13 Trustee, Richmond, VA.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Hearing was held on July 10, 1996, on debtor's former spouse's motion objecting to confirmation of debtor's modified chapter 13 plan. At the conclusion of the trial, the court took the matter under advisement. For reasons stated in this opinion, the court denies confirmation of the plan.

### Findings of Fact

On February 8, 1995, judgment was entered against debtor in the General District Court of the City of Hopewell for arrearage child support, attorney fees, and interest. Debtor filed a chapter 7 bankruptcy petition

on October 6, 1995. Since 11 U.S.C. § 523(a)(5) precludes the discharge of arrearage child support, however, the discharge debtor received on January 24, 1996, did not affect the state court judgment. Two months later, on March 25, 1996, debtor filed a chapter 13 petition. Both the former spouse and the trustee objected to debtor's first plan because it failed to include interest and because payments were to be paid directly to the former spouse rather than through the chapter 13 trustee.

Debtor filed a modified plan on May 9, 1996. This second plan proposes to pay 100%, with 59 payments of $500.00 each and a final "balloon" payment of $12,704.27. Debtor intends to make the final payment in one or more of five ways: (1) by turning over any tax refunds he receives; (2) by securing an equity line on his house; (3) by retiring from current job and cashing in his retirement plan; (4) by securing a loan from his mother; or (5) by securing a loan from his father-in-law. Although this modified plan included interest and specified that payments were to be made through the trustee, the former spouse objects and claims that it is not filed in good faith. 11 U.S.C. § 1325(a)(3).

### Discussion and Conclusions

Before the court may approve a chapter 13 plan, the court must find that the plan was "proposed in good faith." 11 U.S.C. § 1325(a)(3). The good faith inquiry is designed to "prevent abuse of the provisions, purpose, or spirit of Chapter 13." *Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1130 (4th Cir.1995); *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir.1986). Unfortunately, "good faith" was not defined in either the Bankruptcy Code or its legislative history. *See* 5 L. King, Collier on Bankruptcy ¶ 1325.04 (15th ed.1996). As a result, the good faith requirement has become an elastic concept, dependent on the facts and circumstances of each particular case and the discretion of the court. *In re Martin*, 189 B.R. 619 (Bankr.E.D.Va.1995). Factors to be considered in determining whether this good faith requirement has been met include: (1) the percentage of the proposed repayment; (2) debtor's financial situation; (3) the period of time over which payment will be made; (4) debtor's employment history and prospects; (5) the nature and amount of unsecured claims; (6) debtor's past bankruptcy filings; (7) debtor's honesty in representing facts; and (8) any unusual or exceptional problems facing the particular debtor. *See Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir.1982).

Debtor bears the burden of proof as to his plan's confirmation. *Tillman v. Lombard*, 156 B.R. 156, 158 (E.D.Va.1993); *In re Goodavage*, 41 B.R. 742, 743 (Bankr. E.D.Va.1984). Moreover, it is debtor's obligation when seeking the court's confirmation of a plan to specify as accurately as possible the amounts to be paid to creditors and the source of payment. This obligation stems in part from the feasibility requirement of § 1325(a)(6), which provides that the court shall confirm a plan if "the debtor will be able to make all payments under the plan and to comply with the plan" as well as the good faith requirement of § 1325(a)(3). 11 U.S.C. §§ 1325(a)(6), 1325(a)(3).

In this instance, debtor has not carried his burden of persuading the court that his plan is confirmable. Debtor's chapter 13 plan is deficient in three areas: timing, ability to make payments, and duration.

Debtor filed his chapter 13 petition two months after receiving a discharge under chapter 7. Although under § 523(a)(5) arrearage child support is nondischargeable in both chapters 7 and 13, the latter permits debtor to apportion payments for the duration of his plan. Pre-filing conduct and the nondischargeability under chapter 7 of certain claims are additional factors in evaluating a debtor's good faith. *See Neufeld*, 794 F.2d at 152; *In re Oliver*, 186 B.R. 403, 405 (Bankr.E.D.Va.1995). While the nondischargeability of debtor's arrearage child support in chapter 7 alone does not evidence bad faith, the court must consider the benefits debtor derives under chapter 13 which were unavailable to him under chapter 7. The court must weigh this benefit under the "totality of circumstances" approach to determine if debtor's plan violates the purpose or spirit of chapter 13. *See Neufeld*, 794 F.2d at 152.

The main problem with debtor's plan is his proposal to make a final "balloon" payment of $12,704.27 in the last month of his plan. Although debtor identifies several sources of income from which he can make the final payment, those sources of income are speculative and uncertain. Under a chapter 13 plan, debtor must prove with reasonable certainty his ability to make the payments under the proposed plan. *In re Dant,* 9 B.R. 117 (Bankr.E.D.Va.1981). The court should not confirm a plan unless it appears under the totality of circumstances that the plan has a reasonable likelihood of success.

Here, debtor offered little evidence that any of his five sources of income would satisfy his final balloon payment. He has failed to demonstrate the adequacy of future tax refunds or the likelihood of either securing a line of home equity or securing loans from family members.

Debtor has focused much of his testimony and argument on using the equity in his retirement plan for the final balloon payment, stating that he was eligible for retirement and currently had sufficient funds in his retirement plan to make the payment. Other than his testimony, however, debtor offered no evidence substantiating his claims, and the court is left to speculate on the adequacy of funds. Moreover, debtor is remarried and has an infant child. It is unlikely that debtor would retire from a stable and steady job and exhaust his retirement savings to satisfy his final payment when he still must provide for his present family.

Finally, debtor's plan calls for payments to be made over five years. Chapter 13 plans "may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period," not to extend beyond five years. 11 U.S.C. § 1322(d). The opportunity to extend a plan beyond 36 months duration provides debtors who have small disposable incomes the flexibility to extend their plans long enough to overcome the inability to cure defaults under § 1322(b)(5). *In re Martin,* 189 B.R. at 625. Debtors should not be permitted, however, to extend their plans where their ability to pay is called into question.

The timing and speculative nature of debtor's plan coupled with his request for an extended, five-year payment schedule preclude confirmation of the plan. It would be most unfair to require the former spouse to wait five years to see whether debtor will pay a substantial portion of the nondischargeable debt. The court concludes that the plan is not feasible and was not proposed in good faith.

A separate order will be entered denying confirmation.