**In re HENDRICKS, Suzanne Karyl, Debtor.**

**No. 98–03759–6J3.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

March 28, 2000.

Nicholas B. Bangos, Nicholas B. Bangos, P.A., Cocoa Beach, FL, for debtor.

Kevin E. Mangum, Meininger, Fisher & Mangum, P.A., Orlando, FL, for trustee.

Laurie K. Weatherford, Winter Park, FL, Chapter 13 Trustee.

*FINDINGS OF FACT AND CONCLU-SIONS OF LAW DENYING CON-FIRMATION OF DEBTOR'S CHAP-TER 13 PLAN AND SUSTAINING DEBTOR'S OBJECTION TO CLAIM 2 FILED BY MEISENHEIMER & HERRON*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on December 2, 1999, and on January 11, 2000. At the initial hearing, the confirmation of the Second Amended Chapter 13 Plan (Doc. No. 108) filed by the Debtor, Suzanne Karyl Hendricks, was heard. Both the Chapter 13 Trustee and the primary creditor, Home Insurance Company ("Home"), filed objections to the Debtor's Chapter 13 Plan (Doc. Nos. 88 and 90). Further, at the initial hearing, the Debtor noted she recently had filed an Amended Objection to Claim 2 filed by Meisenheimer & Herron ("M & H") (Doc. No. 114). M & H was given the opportunity to file a response to the Debtor's objection. M & H later filed such a response (Doc. No. 116), which was heard at the second hearing on January 11, 2000. For the reasons stated below, confirmation of the Debtor's Amended Chapter 13 Plan is denied, and the Debtor's Amended Objection to the Claim of M & H is sustained.

The Debtor initially filed a Chapter 7 bankruptcy proceeding on April 30, 1998 (the "Petition Date"). The timing of the bankruptcy filing was attributable to collection efforts of the Debtor's largest unsecured creditor, Home. The claim of Home is based on a judgment against the Debtor in the amount of $182,999.54 obtained on August 7, 1997 (the "Judgment").[1]

The Judgment relates to a very litigious divorce between the Debtor and her former husband. M & H represented the Debtor during these divorce proceedings. The Debtor was dissatisfied with the ser-

---

**1.** M & H originally obtained the Judgment against the Debtor. M & H later assigned the Judgment to Home.

vices of her attorneys and, after the divorce was concluded, sued M & H for malpractice. The Debtor still owed M & H attorney fees for their representation during the divorce in the amount of $48,211.60.

The malpractice litigation against M & H was hard fought but ultimately resolved. As a result of a final stipulation between the parties, the Judgment was entered against the Debtor for costs and attorney fees incurred during the malpractice litigation in the amount of $182,999.54.[2] The Judgment further provided:

> This Court, having accepted the stipulation of the parties that the Cross Complaint shall be dismissed without prejudice, to be reinstated in the event of a reversal or remand after appeal, hereby orders that Judgment be entered in favor of each and every Defendant and against Plaintiff, Suzanne K. Largen [Hendricks], thereby disposing of all issues and claims asserted in the Second Amended Complaint.

In essence, the Debtor forfeited her claim for malpractice against her attorneys and was required to pay the significant fees and costs incurred by M & H in the litigation of almost $183,000. The Judgment was intended to resolve "all issues and claims" asserted during the litigation.

Just days after the Judgment was entered, the Debtor moved from California and, in September, 1997, the Debtor and her new spouse jointly purchased a home in Melbourne, Florida. The Debtor bought the home using all of her then available cash. After living in Florida a few months and due to Home's continuing collection efforts on the Judgment, the Debtor filed this Chapter 7 liquidation case.

Both Home and the Chapter 7 Trustee promptly filed adversary proceedings in the Debtor's Chapter 7 case challenging the Debtor's entitlement to a discharge as well as to the dischargeability of the Judgment. (Adversary Proceeding Nos. 98–221 and 98–222.) Home and the Chapter 7 Trustee questioned the Debtor's motivation in moving to Florida to use Florida's liberal homestead exemption, her intent in paying cash to purchase the home rather than paying her other creditors, and the history of the Debtor's depletion of cash accounts to transfer non-exempt assets into exempt assets. Rather than try these issues in the adversary proceeding, the Debtor converted her Chapter 7 case to the current Chapter 13 proceeding in order to obtain a "super" discharge available under Section 1328 of the Bankruptcy Code.[3]

In her Chapter 13 case, the Debtor filed a Second Amended Chapter 13 Plan (Doc. No. 108) that provides for payment of only three claims. The IRS will receive payment on its priority claim in the amount of $70,704.50. The Debtor's attorney will receive payment for fees earned during the Chapter 13 case in the amount of $11,054.46. Lastly, the Chapter 13 Trustee will receive fees in the amount of $5,206.45. Unsecured creditors will receive zero payments. As such, Home will receive absolutely nothing on the Judgment.

When the Debtor filed her Chapter 7 case, she listed unsecured claims of $298,123.86. She also estimated the additional claim of the Internal Revenue Service at $94,000. Not all of these creditors filed claims during the Chapter 13 proceeding. Indeed, the only claims filed are a small credit card claim owed to Universal Card Services Corporation in the amount of $1,456.72, the total claim of the Internal Revenue Service for $71,047.46, of which $70,704.50 is a priority claim, the claim of Home for $196,286.64, and Claim 2 filed

---

2. As of the Petition Date, interest on the Judgment had accrued in the amount of $13,287.10, resulting in a final claim of $196,286.64. Home filed Claim No. 3 in this amount.

3. Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

directly by M & H in the total amount of $231,211.14. M & H's claim includes the full amount of the Judgment that also is included in Home's claim and, in addition, separately requests the payment of the underlying attorney fees due to them for their representation of the Debtor in her divorce. The amount of these fees is $48,-211.60.

■ *Debtor's Objection to M & H Claim.* M & H contend they are entitled to the payment of their attorney fees. The Debtor, in response, contends that the Judgment resolved M & H's claim for attorney fees, albeit without prejudice, based upon the parties' stipulation and on the understanding that the claim could be reinstated only if the Judgment was reversed or remanded after appeal. No such reversal or remand has occurred.

The Court agrees with the Debtor's interpretation. The California state court in the Judgment specifically stated that the order was disposing "of all issues and claims asserted" in the litigation. One of these claims was the cross-claim of M & H for attorney fees. The parties clearly contemplated that the Judgment was a final resolution of the litigation and that M & H would assert no further claim for the underlying attorney fees other than in the event of a reversal or remand of the Judgment on appeal. Because no such remand or reversal occurred, the claim was resolved in the Judgment. The Debtor is liable to Home for the Judgment but not for these additional attorney fees. Accordingly, the Debtor's objection to the claim of M & H is sustained. The claim is disallowed in full insofar as the claim seeks M & H's fees and is duplicative of the separate claim filed by Home as assignee of the Judgment (Claim No. 3).

*Chapter 13 Confirmation Issues.* Both Home and the Chapter 13 Trustee assert that the Debtor is not entitled to confirmation of her Second Amended Chapter 13 Plan for several reasons: (i) the Debtor does not qualify as a debtor under Section 109(e) of the Bankruptcy Code because her unsecured debts exceed the eligibility limits; (ii) the Debtor did not file the Chapter 13 plan in good faith; (iii) the Debtor fails to devote all of her net disposable income to payments under the Chapter 13 plan as required by Section 1325(b); and (iv) the Chapter 13 plan is not feasible.

*Eligibility to File Chapter 13.* Home contends that, even if the claim of M & H is not allowed, the Debtor still had unsecured debts on the Petition Date that exceeded the amount permitted in Section 109(e) of the Bankruptcy Code. Section 109(e) provides that "only an individual with regular income that owes, on the date of the filing of the petition, non-contingent liquidated unsecured debts of less than $269,250 ... may be a debtor under Chapter 13 of this Title." At this time, the Debtor has allowed unsecured claims totaling $268,790.82, an amount slightly less than the eligibility limit by a margin of $459.18. However, several of the unsecured creditors originally listed in the Debtor's schedules did not file claims. If the claims of these creditors now are included, the Debtor does not qualify to be a Chapter 13 debtor. The Debtor originally listed every one of her debts as contingent in her initial schedules. However, the vast majority of these claims were neither contingent nor unliquidated.

■ Liquidation of a claim relates to the amount of the liability, not the existence of liability. If the amount due is ascertainable by agreement of the parties or operation of law, the claim is liquidated. *U.S. v. Verdunn,* 89 F.3d 799, 802 (11th Cir.1996). The disputed nature of the claims is not relevant to determination of Section 109 eligibility. If the debt is readily calculable at the time of filing the petition, even if contested, it is liquidated. *Id.* at n. 9. Similarly, a debt is not contingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition. *Id.* at 801 n. 7, citing *In re Knight,*

55 F.3d 231, 236 (7th Cir.1995) and *In re Loya,* 123 B.R. 338, 340 (9th Cir. BAP 1991).

■ In this case, in addition to the claim of Home and Universal Card Services, the Debtor listed the following unsecured creditors on her initial schedules:

| NAME OF CREDITOR | DATE CLAIM WAS INCURRED | TYPE OF CLAIM | AMOUNT OF CLAIM |
|---|---|---|---|
| Bauer & Shultz, P.A. | November, 1993 | Attorney Fees and Costs | $60,000.00 |
| Beatrice L. Snider, Esquire | March, 1995 | Attorney Fees and Costs | $ 1,046.90 |
| Kenneth Stone, Esquire | May, 1997 | Attorney Fees and Costs | $12,958.50 |
| Marc D. Adelman, Esquire | 1995 | | $ 1,529.00 |
| Wells Fargo Bank | October, 1995 | Credit Card Debt | $22,838.00 |
| TOTAL | | . | $98,372.40 |

Each of these debts arose prior to the Petition Date. The Debtor lists the precise amount for each claim. The claims are either for credit card debt or for attorney fees. The Debtor gave absolutely no credible basis why any of these claims were contingent or unliquidated. Therefore, in addition to the allowed filed claims, the Debtor had additional liquidated, non-contingent claims on the Petition Date of $98,-372.40. As such, when added to her current unsecured debt of approximately $268,000, the Debtor well exceeds the eligible limit of $269,250 necessary to qualify as a Chapter 13 debtor. Pursuant to Section 109(e), the Debtor is not entitled to proceed with this Chapter 13 case.

■ *The Debtor Did Not Propose the Plan in Good Faith.* Home asserts that the Debtor filed the Chapter 13 plan in bad faith. Section 1325(a)(3) requires the debtor propose the plan in good faith. The Chapter 13 debtor bears the burden of proving good faith if a creditor objects. *In re Caldwell,* 895 F.2d 1123 (6th Cir. 1990). The totality of circumstances surrounding the Debtor's actions in her Chapter 13 case are relevant in establishing good faith. Factors to use in determining good faith include an analysis of the debtor's budget, the duration of plan, the debtor's motivations in seeking Chapter 13 relief, the debtor's degree of effort, the debtor's future income, any special circumstances, the frequency with which the debtor seeks bankruptcy relief, the circumstances under which the debtor contracted her debts, her dealings with her creditors, and the burden which the plan's administration will place on the Trustee. *In re Kitchens,* 702 F.2d 885 (11th Cir. 1983).

■ Examining the totality of circumstances surrounding the Debtor's proposed plan, the Court finds that the Debtor did not propose her plan in good faith. The Debtor, after settling her claim with M & H, virtually fled to Florida, a state with a liberal tradition of homestead exemptions. Within months, the Debtor filed her first Chapter 7 case. Next, the Debtor converted her Chapter 7 case to a Chapter 13 case to avoid defending the adversary proceedings brought by Home and the Chapter 13 Trustee. The Debtor wanted to avoid the cost of litigation and the threat to her discharge, which is permissible as long as the Debtor makes a good faith attempt to pay the debt in her Chapter 13 case.

Here, the Debtor proposes a three-year plan that makes zero payments to her unsecured creditors. Yet, for the reasons discussed below, the Debtor has substantial additional net disposable income that she could devote to payment of these legitimate claims. The Debtor would like to discharge her debts without making any significant effort to do so. Given the totality of circumstances, the Debtor has made *no* effort to pay her legitimate debts. The Debtor has not proposed her Chapter 13 plan in good faith.

■ *Net Disposable Income.* Nor has the Debtor devoted all of her net disposable income to her Chapter 13 plan. Sec-

tion 1325(b)(1) of the Bankruptcy Code provides that, if an unsecured creditor objects to the confirmation of a Chapter 13 plan, the plan is not subject to confirmation unless the unsecured creditor receives payment in full or "the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." Disposable income is defined to include any income that is received by the debtor and which is not necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. Section 1323(b)(2) of the Bankruptcy Code.

As a result of her divorce, the Debtor received an award of alimony in the amount of $90,000 per year, or $7,500 per month. The alimony payments started in 1992 and will stop in 2006. The Debtor has no other source of income and does not work. Her husband contributes little if any income to the family. She lives with her husband and has no other dependents. She owns her home and her car free and clear of any liens and has no regular monthly bills other than normal expenses associated with food, taxes, clothing, utilities and normal living expenses.

However, looking at the Debtor's schedule of expenses, the Debtor contends that she is virtually penniless after making monthly plan payments of $1,349.00 per month. The Debtor has consistently inflated her expenses. For example, the Debtor overestimates her federal tax liability by over $700 per month. She similarly has inflated costs for food, gifts, recreation and phone bills.

Rather than providing an honest or reasonable list of expenses, the Debtor apparently first looked at her income and contrived to find a way to "spend" all her monies other than to pay those creditors she selected. The expenses are not reasonable living expenses for two people with no mortgage or car payments. Rather, they reflect an attempt by the Debtor to avoid paying legitimate claims of her creditors and an abuse of the bankruptcy system. As such, the Court, without hesitation, finds that the Debtor has failed to allocate all of her net disposable income to payments required under her Chapter 13 Plan. Indeed, the Court finds that the Debtor has sufficient net disposable income to pay a substantial portion of her claims over a reasonable time.

■■■ *The Chapter 13 Plan is Not Feasible.* The Debtor's Chapter 13 Plan further requires a large balloon payment in the 36th month of the plan. The Bankruptcy Code neither makes provisions for nor precludes the use of balloon payments in Chapter 13 cases. *Matter of McClaflin,* 13 B.R. 530, 533 (Bankr.N.D.Ill.1981); *In re Crotty,* 11 B.R. 507, 511 (Bankr. N.D.Tex.1981). In *Crotty,* the bankruptcy court required the debtor to prove by credible and definite evidence that he actually could make the balloon payment. *Id.* Similarly, in *In re Harrison,* 203 B.R. 253, 256 (Bankr.E.D.Va.1996), the bankruptcy court required the debtor to prove with reasonable certainty his ability to make the payments under the proposed plan, including the balloon payment. The fears expressed by the *Crotty* court are also present here. *Crotty,* 11 B.R. at 511. The debtor in *Crotty,* just as the Debtor here, could have dismissed the case just prior to the balloon payment, filed another Chapter 13 " . . . and in theory could provide to repay the 'balloon payment' which survived the prior case over the term of the subsequent case. Congress did not intend Chapter 13 as a device to indefinitely delay the payment of allowed claims." *Id.*

In the present case, the Debtor provided no definite and credible evidence that she could obtain the funds to make her balloon payment. Although she does own her home free and clear of liens, the Debtor has no stream of future income to convince any reasonable lender to advance the funds expecting a long-term payoff. Further, even if such a loan was possible, the Debtor's husband, as a co-owner, must consent

to the loan and mortgage. The husband, who has an equal interest in her home, failed to testify that he would consent to such a use and nothing in the record indicates he willingly would relinquish his interest in the home. The Debtor has failed to prove she could make this large payment at the end of her case. The Debtor's Chapter 13 plan is not feasible.

*Conclusion.* There are many fundamental problems with the Debtor's proposed plan. The Debtor does not qualify as a debtor under Section 109(e) because her debts exceed the statutory eligibility limits. The plan was not filed in good faith. The Debtor fails to devote all her disposable net income to payments under the plan. Because the Debtor failed to prove the likelihood of obtaining the funds necessary to make the balloon payment in month 36, the plan is not feasible. Given all these reasons, the Debtor's Chapter 13 plan cannot be confirmed. Confirmation of the Debtor's Second Amended Chapter 13 plan is denied. As to the Debtor's Amended Objection to the Claim of M & H, the Objection is sustained. A separate order consistent with these Findings of Fact and Conclusions of Law shall be entered.